## IN RE AMELIA W. ET AL.*
## (AC 20486)

Foti, Spear and Dranginis, Js.

Argued January 8—officially released March 27, 2001

*Mary Ann Barile*, with whom was *Sandra G. Huggins*, for the appellant (respondent father).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Mary K. Lenehan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Justino Rosado,* for the minor child.

SPEAR, J. The respondent father[1] appeals from the judgments of the trial court terminating his parental rights with respect to his two daughters, A and N. He claims that the court improperly found that (1) the department of children and families (department) had made reasonable efforts to reunite the respondent with his children and (2) there was no ongoing parent-child relationship with either child.[2] We dismiss the first claim as moot and affirm the judgments of the trial court with respect to the second claim.

The relevant facts found by the court are as follows. A was born on June 20, 1989, and N was born on September 20, 1992. The court determined that A and N were neglected after the department found them living in an unsafe dwelling that was infested with roaches and littered with dirty clothes and garbage. Their mother was a substance abuser, and the respondent was incarcerated. Both children were committed to the custody

---

[1] Only the respondent father has appealed from the judgments terminating his parental rights and those of the respondent mother. We refer in this opinion to the respondent father as the respondent.

[2] The respondent also claimed that the court improperly found that termination was in the best interests of the children. This issue was not briefed beyond a statement that: "Respondent implores this court to review findings respecting the best interests of the children and to conclude that indeed he was prevented from having any relationship with the children as a result of the unreasonable acts of petitioner." We, therefore, decline to review this inadequately briefed issue. See *State* v. *Fuller,* 56 Conn. App. 592, 627 n.32, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000); *Middletown Commercial Associates Ltd. Partnership* v. *Middletown,* 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).

of the petitioner, the commissioner of children and families (commissioner), on July 30, 1996.

The respondent has a long psychiatric history that includes paranoid schizophrenia, bipolar disorder, borderline personality disorder, antisocial personality disorder and intermittent explosive personality disorder. He also has an extensive criminal history that reveals a pattern of violence. He has been convicted of assault on a peace officer, threatening and carrying a dangerous weapon. Despite his history, the respondent continuously denied that he had any problems and rejected the assistance offered by social services, claiming that he did not need it.

On May 14, 1998, the commissioner filed petitions to terminate the respondent's parental rights with respect to his children, alleging that (1) the department had made reasonable efforts to reunify the children with the respondent, (2) the children were found in a prior proceeding to have been neglected or uncared for, and the respondent has failed to achieve the necessary degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, he could assume a responsible position in the life of the children, and (3) there is no ongoing parent-child relationship with respect to the respondent that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the children and to allow further time for the establishment or reestablishment of a parent-child relationship would be detrimental to the best interests of the children.

The court found by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with his children and that the respondent was "unwilling to benefit from reunification

efforts because he repeatedly told the [department] worker that there was nothing wrong with him and that he did not need services." The court also found that "[the respondent] continues to suffer from serious emotional problems that preclude his ability to safely and competently parent his children and understand their individualized needs. [A] is 'an emotionally fragile, mildly retarded youngster with many perceptual and language difficulties . . . who also suffers from severe anxiety secondary to a severe post-traumatic stress disorder . . . .' [A] is currently on several medications to help stabilize her behavior. [The respondent] has made statements such as the medicine will mix with [A's] Native American blood and have a demonic effect on her. He also told the court-ordered evaluator that [A] is brilliant and has the ability to act as an adult. It is clear that [the respondent] has absolutely no awareness of his child's specialized needs. It is in [A's] best interest to terminate her father's parental rights so that she can continue to live in a structured and nurturing environment with people who understand her problems and can help her in her struggle to overcome the many difficulties that she has faced in her short life.

"When [N] had to engage in an interactional evaluation in May of 1999, she subsequently told a social worker that she was scared and nervous being in the same room with [the respondent] and that she was glad that he had left. She has also told her foster mother that she is fearful that she will be taken away from their home. [N] deserves permanency and it is clearly in her best interest to terminate [the respondent's] parental rights in order to allow her to be adopted by her aunt and uncle." On January 13, 2000, the court terminated the respondent's parental rights. This appeal followed.

I

The respondent claims that the court improperly determined that the department had made reasonable

efforts to reunify the respondent with his children. We dismiss this claim because, even if we agreed with the respondent, we could accord him no practical relief.

We first turn to the governing statute, General Statutes (Rev. to 1997) § 17a-112 (c).[3] To prevail, the commissioner is required to prove by clear and convincing evidence that (1) the department has made reasonable efforts to reunify the children with the parent *unless* the court finds that the parent is unable or unwilling to benefit from reunification efforts, or the court has found at an earlier hearing that such reasonable efforts are not appropriate, (2) there is no ongoing parent-child relationship and (3) termination is in the best interests of the children. It is clear from the statute that the reasonable efforts prong is satisfied where the court finds that the parent "is unable or unwilling to benefit from reunification efforts . . . ." General Statutes (Rev. to 1997) § 17a-112 (c) (1).

Although the respondent has briefed extensively his assertion that the court's finding that the department made reasonable efforts is without foundation in the evidence, we cannot consider this claim. Even if we were to conclude that the court improperly determined that the department had made reasonable efforts, the

---

[3] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that . . . (D) There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

unchallenged finding that the respondent was unwilling to benefit from reunification efforts would satisfy this prong of the statute.

"Mootness deprives this court of subject matter jurisdiction. . . . The test for determining mootness is not [w]hether the [respondent] would ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court can grant the appellant. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Citations omitted; internal quotation marks omitted.) *In re David L.*, 54 Conn App. 185, 189, 733 A.2d 897 (1999). The respondent does not challenge the court's finding that he was unwilling to benefit from reunification efforts, which finding satisfies the statute's first prong. We, therefore, dismiss the respondent's claim as moot.[4]

## II

The respondent next claims that the court improperly concluded that there was no ongoing parent-child relationship between him and each of his two children. We are unpersuaded.

The respondent erroneously relies on *In re Valerie D.*, 223 Conn. 492, 613 A.2d 748 (1992). In that case, the commissioner had custody of the child from birth, and, shortly thereafter, the court terminated the moth-

---

[4] We note that the commissioner did not allege in the petitions that the respondent was unable or unwilling to benefit from reunification efforts. Nevertheless, the court so found. The respondent has not challenged the propriety of the court's making such a finding without a specific allegation in the petitions. The respondent chose not to respond to the state's claim in its brief that the reasonable efforts claim is not reviewable because of the legally sufficient finding that the respondent was unwilling to benefit from reunification services.

er's parental rights based, in part, on the court's conclusion that there was no ongoing parent-child relationship. The respondent mother appealed to this court, and we affirmed the judgment. *In re Valerie D.*, 25 Conn. App. 586, 595 A.2d 922 (1991). Our Supreme Court reversed our judgment and remanded the case to the trial court with direction to render judgment for the respondent mother. *In re Valerie D.*, supra, 223 Conn. 535. As the respondent here points out, the Supreme Court reasoned that "[a]s the facts of this case demonstrate . . . once the child had been placed in foster care pursuant to the determinations made under General Statutes § 46b-129, a finding of a lack of an ongoing parent-child relationship three and one-half months later was inevitable under [the termination statute] because absent extraordinary and heroic efforts by the respondent, the petitioner was destined to have established the absence of such a relationship. Thus, a factual predicate for custody, established under the lesser standard of a preponderance of the evidence, led inexorably, for all practical purposes, to the factual predicate for termination required to be established by the higher standard of clear and convincing evidence." Id., 533–34.[5] We conclude that the rationale of *In re Valerie D.* does not apply in this case because of the vastly different factual context.

Here, the respondent's behavior, not the conduct of the department, prevented the development of a relationship with his children. At the time of their commitment to the custody of the commissioner, A was six years old and N was three years old. Sufficient time therefore had elapsed for a bond to develop between the respondent and each of the children. "In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . .

---

[5] The court in that case found that there was no ongoing parent-child relationship as of November 8, 1989. The child was born on July 26, 1989.

The ultimate question is whether the child has no present memories or feelings for the natural parent." (Internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 234, 240, 753 A.2d 409 (2000). On the basis of our review of the evidence, we conclude that it was the respondent's own failure to accept services that precluded the development of such a relationship. The court found that both children had very strong feelings for the respondent, but that those feelings were of fear and apprehension. A tried to drown herself after a visit with the respondent, and N not only did not want to live with him, but also she did not want to visit with him. The court found that A had told the therapist that the respondent had killed her best friend and that she saw her friend lying in a pool of blood. The court did not consider this statement for its truth, but rather to show that A was angry toward the respondent and fearful of him.

We conclude that the court properly distinguished this case from *In re Valerie D.*, supra, 223 Conn. 492. We agree with the court's conclusion that "no positive emotional aspects of a relationship [between the children and the respondent] survived, and, therefore, there is no ongoing parent-child relationship."

The judgments are affirmed.

In this opinion the other judges concurred.