CHIEF OF POLICE OF THE TOWN OF WINDHAM ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 21606)
(AC 21607)
(AC 21608)

Mihalakos, Dranginis and Daly, Js.

Argued September 11, 2001—officially released March 5, 2002

*Richard S. Cody*, for the appellants (plaintiffs).

*Clifton A. Leonhardt*, chief counsel, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Trenton Wright, Jr.*, pro se, the appellee (defendant).

*Theodore N. Phillips II*, for the appellees (defendants Norwich Bulletin et al.).

*Opinion*

MIHALAKOS, J. In these actions, the plaintiffs, the chief of police and the police department of the town of Windham, appeal from the trial court's judgments dismissing their three consolidated administrative appeals from three virtually identical final decisions of the defendant freedom of information commission (commission). The commission's final decisions resulted from complaints filed pursuant to the Freedom of Information Act (act), General Statutes (Rev. to 1997) § 1-7 et seq., now § 1-200 et seq., by the remaining defendants, Trenton Wright, Jr., Mark Reynolds, the Norwich Bulletin, Paul Lewis and Fox 61 News.[1] On appeal, the

---

[1] After a young girl was found dead in August, 1998, the defendants Wright, Reynolds, the Norwich Bulletin, Lewis and Fox 61 News requested that the plaintiffs allow them access to the state's sexual offenders registry. Following the plaintiffs' refusal to do so, those defendants filed complaints with the commission. Wright is the father of two children similar in age to the victim of the alleged homicide. The children resided in the immediate area of the alleged crime. Except for Wright and the commission, the other defendants are media outlets or members of the media.

plaintiffs claim that (1) the court improperly concluded that General Statutes (Rev. to 1997) § 54-102r (Megan's Law)[2] and General Statutes (Rev. to 1997) § 1-19 (b) (3), now § 1-210 (b) (3),[3] require them to disclose the state's sexual offenders registry (registry), (2) the court further misconstrued § 54-102r to require records to be made solely in the public interest and not for police use in the detection or investigation of crime, (3) the commission's prospective orders prevent the plaintiffs' appeals from being moot and (4) disclosure of the registry would have impaired the division of criminal justice in resolving the underlying homicide case. Because subsequent changes in the law and the unlikelihood of further consequences to the plaintiffs have obviated any practical relief that this court may have granted, we dismiss the appeals as moot.[4]

---

[2] General Statutes (Rev. to 1997) § 54-102r concerned the registration of sexual offenders and was popularly known as Megan's Law. That statute, as amended by No. 97-183 of the 1997 Public Acts, was repealed and replaced by law enacted under No. 98-111 of the 1998 Public Acts, which was codified as the new Megan's Law under General Statutes § 54-250 et seq. and has been effective since October 1, 1998. Slight modifications to the law were made under No. 99-183 of the 1999 Public Acts, which became effective July 1, 1999.

[3] It is apparent that the plaintiffs, although referencing General Statutes § 1-210 (b) (4) of the act in their statement of issues and the first heading of their argument, actually are referring to General Statutes (Rev. to 1997) § 1-19 (b) (3), now § 1-210 (b) (3). Section 1-19 (b) (3) provides in relevant part that disclosure is not required of "records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of [sensitive information] . . . ."

[4] We note at the outset that although the parties have neither raised nor briefed the issue of mootness, we have raised it sua sponte because mootness implicates this court's subject matter jurisdiction and must be addressed. See *Lucarelli* v. *Freedom of Information Commission*, 29 Conn. App. 547, 548 n.2, 616 A.2d 816 (1992), cert. denied, 225 Conn. 901, 621 A.2d 284 (1993). We further note that we are aware of our Supreme Court's holding in *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994), which reversed this court's judgment that a new trial was required due to plain error committed by the trial court in a case involving the propriety of a jury's verdict. Noting that this court could consider only the infirmity of the

The following facts and procedural history are relevant to the disposition of the plaintiffs' appeals. The consolidated appeals arise out of the murder of an eleven year old girl in Willimantic on August 13, 1998. Police discovered the girl's body early on August 14, 1998, and extensive media coverage quickly followed. On that day and on subsequent days, the defendant Fox 61 News requested that the plaintiffs release their most current registry, which was, at that time, a public record registered with the police as required by Megan's Law. See footnote 2. The defendants, the Norwich Bulletin and Wright, made similar requests on August 18 and August 20, 1998, respectively. The requesting defendants were denied access to the registry until August 28, 1998, following the August 26, 1998 arrest of a suspect in connection with the homicide.

The requesting defendants filed complaints with the commission alleging that the plaintiffs had violated the act by failing to grant timely access to the registry. On December 22, 1998, the commission issued notices of final decisions on the complaints. The commission con-

jury's verdict if it concluded that the trial court had committed plain error in accepting it, our Supreme Court stated: *"In the absence of a question relating to subject matter jurisdiction,* the Appellate Court had *only limited authority* to reach the issue of possible confusion in the jury's verdict." (Emphasis added.) Id., 97–98. Our Supreme Court based its reversal in part on the fact that this court did not invite the parties to brief the issue of plain error, which we had raised below sua sponte. Id., 99. Unlike *Lynch,* however, the present case concerns subject matter jurisdiction, and that issue requires our independent review whenever and however it is raised. See *In re Shawn S.,* 66 Conn. App. 305, 309, 784 A.2d 405 (" '[w]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case' "), cert. granted on other grounds, 258 Conn. 948, 788 A.2d 97 (2001). Further, in matters involving subject matter jurisdiction, we have exercised our discretion in determining whether to order parties to brief the issue or to decide the issue in lieu of such an order. See *Grabowski* v. *Bristol,* 64 Conn. App. 448, 450, 780 A.2d 953 (2001) (question of subject matter jurisdiction requires court's independent review despite having not been raised by party on appeal); *Lucarelli* v. *Freedom of Information Commission,* supra, 548 n.2.

cluded in each case that the plaintiffs had violated the act when they refused access to the registry because it was a public record under the act and was required to be released upon request, as it did not fit under any exemption allowing nondisclosure. The commission found specifically that the exemption claimed by the plaintiffs, allowing nondisclosure of records made in connection with the investigation of crime,[5] did not apply because the registry was made before the underlying events occurred and it existed, therefore, independent of any investigation being conducted by the plaintiffs. The commission also ordered the plaintiffs to comply with the act in the future, but it did not impose civil penalties and noted that they had acted in good faith under great pressure.

On February 4, 1999, the plaintiffs filed administrative appeals with the court, challenging the commission's final decisions. On May 27, 1999, the court, *Sferrazza, J.*, declined to dismiss the appeals as moot and denied the defendants' motion to dismiss. Judge Sferrazza reasoned that although the enactment of Public Acts 1998, No. 98-111, § 9, codified at General Statutes (Rev. to 1999) § 54-258,[6] precluded further controversy regarding the disclosure of the registry, the commission's pro-

---

[5] The plaintiffs claimed that the registry was exempt from the disclosure requirements of the act pursuant to General Statutes (Rev. to 1997) § 1-19 (b) (3), now § 1-210 (b) (3). See footnote 3.

[6] Public Acts 1998, No. 98-111, § 9, codified at General Statutes (Rev. to 1999) § 54-258, provides in relevant part: "(a) (1) Notwithstanding any other provision of the general statutes, the registry maintained by the Department of Public Safety shall be a public record and shall be accessible to the public during normal business hours. The Department of Public Safety shall make registry information available to the public through the Internet. Not less than once per calendar quarter, the Department of Public Safety shall issue notices to all print and electronic media in the state regarding the availability and means of accessing the registry. Each local police department and each state police troop shall keep a record of all registration information transmitted to it by the Department of Public Safety, and shall make such information accessible to the public during normal business hours. . . ."

spective orders to comply generally with the act could predicate harsher consequences to the plaintiffs for other future violations, despite the unlikelihood that the same violation will occur again. Nonetheless, the court, *Hartmere, J.*, on January 12, 2001, dismissed the appeals on the merits and found, in accord with the commission, that the plaintiffs were not exempt from producing the registry under General Statutes (Rev. to 1997) § 1-19c, now § 1-201,[7] or under § 1-19 (b) (3). Judge Hartmere concluded that § 1-19c did not apply because the registry was clearly compiled and maintained as an administrative function of the plaintiffs pursuant to § 54-102r. Judge Hartmere also concluded that § 1-19 (b) (3) was inapplicable because the registry was not originally compiled for crime detection or investigation, but rather its purpose, flowing from the legislative history of Megan's Law and its subsequent amendments, was rooted in the dissemination of information to keep children and the general community safe. Consequently, Judge Hartmere concluded that the registry should have been timely released and that the appeals warranted dismissal. These appeals followed on February 1, 2001, and were consolidated on March 28, 2001.

I

The plaintiffs first make two separate but essentially redundant claims that the court misconstrued § 54-102r and, therefore, misapplied § 1-19 (b) (3). Because no practical relief may be granted, we decline to address those issues and dismiss the appeals as moot.

Our standard of review regarding mootness is well settled. "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to

[7] General Statutes (Rev. to 1997) § 1-201, now § 1-19c, provides in relevant part that "the Division of Criminal Justice shall not be deemed to be a public agency except in respect to its administrative functions."

resolve. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction . . . ." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 492, 778 A.2d 33 (2001). "It is beyond question that we are without jurisdiction to issue advisory opinions [or to] decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *State* v. *Hopkins*, 62 Conn. App. 665, 679, 772 A.2d 657 (2001). In other words, the "test for determining mootness is not [w]hether the [plaintiffs] would ultimately be granted relief [but] whether there is any practical relief this court can grant the [plaintiffs]." (Internal quotation marks omitted.) *In re Amelia W.*, 62 Conn. App. 500, 505, 772 A.2d 619 (2001).

Courts, however, have developed an exception to the mootness rule for recurring questions that would otherwise completely evade review. "[F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 243 Conn. 772, 777–78, 709 A.2d 510 (1998).

The plaintiffs argue that the court misconstrued the law applicable at the time of the underlying events.

The commission found that Megan's Law required the plaintiffs to disclose the registry at all relevant times,[8] and the court agreed, stating that § 54-102r, as amended by No. 97-183 of the 1997 Public Acts, was intended clearly to require disclosure of the registry to the public. We need not reach the soundness of those conclusions because even if we were to conclude that they were incorrect, subsequent developments in the law as a result of a decision by the United States Court of Appeals for the Second Circuit have rendered the plaintiffs' claims moot. Those developments have dispelled any confusion the plaintiffs may yet harbor in relation to their disclosure duties. Further, the developments have significantly diminished any potential harm the plaintiffs may face from the commission's decisions regardless of whether they were incorrect.

While a decision as to the plaintiffs' consolidated appeals was pending, the Second Circuit upheld a permanent injunction against the full application of Megan's Law.[9] The injunction primarily prevents the further

---

[8] The plaintiffs' assertion that the commission ignored their exemption defense is without merit because the commission clearly found that General Statutes (Rev. to 1997) § 1-19 (b) (3), now § 1-210 (b) (3), did not apply.

[9] See generally *Doe* v. *Dept. of Public Safety*, 271 F.3d 38 (2d Cir. 2001). In *Doe*, a person listed on the registry as a sex offender challenged the constitutionality of Connecticut's Megan's Law on procedural due process grounds under the fourteenth amendment to the United States constitution and sought a permanent injunction on the dissemination of the registry to the public. The United States District Court for the District of Connecticut had granted summary judgment to the plaintiff and ordered the injunction. Id., 46. In upholding the injunction, the Second Circuit concluded that Connecticut's Megan's Law registry implied, as published to the public on the Internet and in printed form, that each person listed on the registry was more likely than the average person to be currently dangerous. Id., 41–42. The court ultimately concluded that publication of the registry to the public violates the due process rights of each listed person until a hearing or other procedurally adequate opportunity is afforded to those persons to address the veracity of the registry's implication. Id., 62. The court noted that to comply with the upheld injunction and renew publication to the public, "Connecticut will likely adopt new procedures more sensitive to whether those on a widely disseminated registry are likely to be currently dangerous." Id., 61.

dissemination of the registry or registry information to the public. *Doe* v. *Dept. of Public Safety*, 271 F.3d 38, 62 (2d Cir. 2001). The court concluded that Connecticut's version of Megan's Law is too broad a means of fulfilling its purpose of protecting the health and welfare of the state's children. Id., 41–42. The court further held that our law "fails to accommodate the constitutional rights of persons formerly convicted of a wide range of sexual offenses who are branded as likely to be currently dangerous offenders irrespective of whether or not they are."[10] Id.; see footnote 9.

The Second Circuit's decision to uphold the injunction renders the plaintiffs' claims moot because no practical relief may be granted to the plaintiffs even if we were to use the injunction as a basis for reversing the decisions of the court and the commission. Although we recognize the importance of the Second Circuit's decision in *Doe,* a determination of whether the court, and thereby the commission, incorrectly applied the law in these instances[11] is unnecessary because it would amount to a "determination [from] which no practical relief can follow." (Internal quotation marks omitted.) *State* v. *Hopkins,* supra, 62 Conn. App. 679. Specifically, because the injunction now prevents the plaintiffs and other similarly situated state actors from disseminating the registry or registry information to the public, a determination as to the proper application of a disclosure exemption of the act as it relates to the registry is contextually meaningless. Further, as discussed in part II, reversing the judgments of the trial court at this juncture serves only to enhance potentially the reputation of the plaintiffs and not the ends of justice, as the

---

[10] In Connecticut state courts, great weight is afforded to the decisions of the Second Circuit as to matters involving the federal constitution. *State* v. *Faria,* 254 Conn. 613, 625 n.12, 758 A.2d 348 (2000).

[11] See *Presnick* v. *Freedom of Information Commission,* 53 Conn. App. 162, 164, 729 A.2d 236 (1999) (standard of appellate review for trial court review of commission decisions).

plaintiffs were not appreciably harmed by the commission's decisions and they are unlikely to face hardship from those decisions in the future. Therefore, the issues regarding whether the court or the commission misconstrued the earlier version of Megan's Law in relation to the act's exemption provisions are moot, and further review would waste judicial resources imprudently and serve no practical purpose.

## II

Nonetheless, the plaintiffs claim that review is required because the commission's prospective orders prevent their appeals from being moot, and this court may offer practical relief by reversing the judgments of the trial court and clearing their names in the event of future violations of the act. See generally *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 9, 688 A.2d 314 (1997) (Appellate Court judgment of mootness reversed because prospective order remained in controversy), on remand, 47 Conn. App. 466, 704 A.2d 827 (1998). Our Supreme Court has recognized, however, that a controversy involving prospective orders can become moot by "a change in circumstances subsequent to the [commission's] decision . . . ." Id., 9 n.10. Therefore, the present case is unlike the situation in *Domestic Violence Services of Greater New Haven, Inc.*, because here the prospective orders, in relation to the operation of Megan's Law in conjunction with the provisions of the act, were rendered inert by the subsequent permanent injunction that was upheld by the Second Circuit. Moreover, it is not within our province to intercede on behalf of the plaintiffs merely because prospective orders could result in harsher consequences from future controversies, especially when, with respect to the interaction between Megan's Law and the act, the

potential for such conflicts is now exceedingly slim.[12] Accordingly, the plaintiffs' appeals do not meet the second prong of the mootness exception because the current state of the law obviates the concern, in all reasonable likelihood, that the issues raised here will arise again.

Furthermore, this is not a situation in which the "potential for harm to the [plaintiffs] if we spurn [their] appeal[s] is of sufficient magnitude to overcome any claim of mootness." *State* v. *Reilly*, 60 Conn. App. 716, 725, 760 A.2d 1001 (2000). In light of the commission's recognition of the plaintiffs' good faith and the pressure under which they acted, it does not appear to this court that the commission's final decisions or its prospective orders will promulgate prejudice against the plaintiffs, as they have contemplated. Thus, even if this court, arguendo, overruled the trial court and, thereby, the commission, the effect on the plaintiffs of these events is unchanged, as their reputations apparently have been unstained by these proceedings.

### III

The plaintiffs' final claim is that disclosure of the registry may have impaired the division of criminal justice in resolving the underlying homicide. This court need not address that issue because the division of criminal justice is not a party to these appeals, and the plaintiffs do not have standing to raise issues regarding harm to others. See *Russell* v. *Yale University*, 54 Conn. App. 573, 576–77, 737 A.2d 941 (1999). Therefore, after reviewing the record on appeal, evaluating the briefs and arguments of the parties, and accounting for the

---

[12] In point of fact, the permanent injunction that was upheld by the Second Circuit prevents the plaintiffs from running afoul of the act in regard to the registry because now it cannot be released to the public. It will be soon enough to deal with actual controversies when and if publication of the registry to the public is reinstated, instead of assuming that controversies do or will exist where there can be none under the current law.

recent decision of the Second Circuit, we conclude that no practical relief is available to the plaintiffs and that these appeals are nonjusticiable.

The appeals are dismissed as moot.

In this opinion the other judges concurred.