KEVIN L. STROBEL *v.* ROSE LI-HWA STROBEL
(AC 22432)

Schaller, Mihalakos and Dranginis, Js.

Argued May 1—officially released November 5, 2002

*Rose Li-Hwa Strobel,* pro se, the appellant (defendant).

*Kevin L. Strobel,* pro se, the appellee (plaintiff), filed a brief.

*Opinion*

DRANGINIS, J. This is a classic high conflict, overlitigated family matter, where a minor child has been the subject of parental conflict in the court system since 1994. The child lived primarily with his mother, the defendant, Rose Li-Hwa Strobel, after the dissolution of marriage in 1997, and now resides with his father, the plaintiff, Kevin L. Strobel, after a motion for modifi-

cation was granted in 1999. Subsequently, the court fashioned orders, which were designed to deal with the difficulties that the child was having with his relationship with his parents. Thereafter, the court entered the temporary orders of custody and supervised visitation, which are the subject of this appeal.

The defendant claims that the court improperly (1) considered the visitation issue without adhering to General Statutes § 46b-7, which requires advance notice of the contents of a family services evaluation, and (2) entered its custody and visitation orders without affording her an opportunity to be heard.[1] We dismiss this appeal for lack of a final judgment.

The following facts are relevant to our resolution of the defendant's appeal. The parties married on September 9, 1989, and had one child, born March 24, 1990. The court dissolved the parties' marriage on July 22, 1997, granting joint legal custody of the minor child, but awarding primary physical custody to the defendant. The court modified the custody arrangement and granted primary physical custody of the minor child to the plaintiff on November 15, 1999.

On April 12, 2001, counsel for the minor child filed a motion that supervised visitation between the defendant and the minor child be ordered, subsequent to a suicidal gesture by the minor child. The child's guardian ad litem joined in the request. On April 16, 2001, the court denied the motion without prejudice with a date of June 26, 2001, to report back to the court, and referred the matter to family services for a custody and visitation evaluation (report). That was the most recent of several interventions by family services over the years.

---

[1] We decline to address the defendant's third and final claim that the court granted supervised visitation after a different judge had denied such a request. A review of the record reveals that the court had denied the request without prejudice and initiated the process of information gathering by family services. Therefore, the defendant's third claim is without merit.

The parties reappeared in court on October 10, 2001, to receive the report. Although the custody and visitation evaluation[2] indicates a completion date of August 24, 2001, the record reveals that the report was given to the parties for the first time when they appeared in court on October 10, 2001. The parties both were, and are, self-represented. At that stage of the proceedings, only the minor child was represented. Interestingly, and regretfully, counsel for the minor child did not file a brief or appear for oral argument in this appeal.

The parties and the court received the report on October 10, 2001. Neither the court nor the plaintiff or the defendant had the opportunity to view the report prior to appearing in court on that day. The court accordingly took a recess to permit the defendant to complete her review of the report before proceeding. During the in-court review of the report, counsel for the minor child expressed grave concern about the ongoing conflict between the defendant and the minor child and its negative impact on the child. Kathleen Goncalves, the family services counselor who had prepared the report, further expressed the need for the court's intervention to protect the minor child immediately.

When the proceedings reconvened, the defendant claimed that she was entitled to a hearing to call witnesses to counter the information contained in the report. In response, the court stated: "Let me hear all your concerns then. But remember, we're not going to litigate the report right now. I just need to know what your primary concerns are about today . . . ." The defendant reiterated that she wanted a full hearing on the report. The court noted that it had reviewed the entire file and was duly alarmed by the information

---

[2] Although the court has a policy that reports of family services are sealed to protect the child or children who are the subject of the evaluation, the plaintiff inexplicably has reproduced the entire evaluation as appendix two in his brief.

contained therein, particularly with respect to the minor child's emotional state. The court opined that the matter would be more appropriately handled in the Juvenile Court as a family with service needs petition, where the child could be monitored by a probation officer, because the court had "serious concerns about how the whole family is functioning."

On the basis of the severity of the allegations contained in the report, the court issued temporary orders of supervised visitation to protect the interest of the child. Moreover, the court ordered that the plaintiff temporarily have sole legal custody of the minor child. The court then articulated that the orders of custody and supervised visitation were temporary, and that the next hearing would be held in one month. In fact, the court scheduled such a hearing for three days, on November 13, 14 and 15, 2001. The defendant filed the present appeal.

As previously indicated, we dismiss the defendant's appeal for lack of a final judgment.[3] "The lack of a final judgment is a jurisdictional defect that mandates dismissal" *Kobyluck* v. *Zoning Board of Appeals*, 70 Conn. App. 55, 58, 796 A.2d 567 (2002). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." (Internal quotation marks omitted.) *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn.

---

[3] In dismissing the appeal, we revisit our prior denial of the plaintiff's motion to dismiss on the same ground of lack of jurisdiction. See *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 511 n.6, 446 A.2d 1082 (1982). "[I]n matters involving subject matter jurisdiction, we have exercised our discretion in determining whether to order parties to brief the issue or to decide the issue in lieu of such an order." *Chief of Police* v. *Freedom of Information Commission*, 68 Conn. App. 488, 490–91 n.4, 792 A.2d 141 (2002). Here, because the parties have had an earlier opportunity to address the identical jurisdictional question, in the exercise of our discretion, we decline to order further briefing on that question.

App. 89, 103, 674 A.2d 1335 (1996); see Practice Book § 10-33.

"With the exception of certain statutory rights of appeal that are not relevant here, appellate jurisdiction is limited to appeals from final judgments. See General Statutes §§ 51-197a, 51-199 and 52-263; see also Practice Book § 4000 [now § 61-1]. . . . Limiting appeals to judgments that are final serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings. See [*Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 258, 520 A.2d 605 (1987)]; *E.J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 626, 356 A.2d 893 (1975)." (Citation omitted; internal quotation marks omitted.) *Bryant* v. *Bryant*, 228 Conn. 630, 634, 637 A.2d 1111 (1994), quoting *Madigan* v. *Madigan*, 224 Conn. 749, 752–53, 620 A.2d 1276 (1993).

Although our jurisdiction is limited to appeals from final judgment, a "gray area" exists between those judgments "which are undoubtedly final and others that are clearly interlocutory and not appealable." (Internal quotation marks omitted.) *Madigan* v. *Madigan*, supra, 224 Conn. 753. In determining whether a decision by a trial court is a final judgment for purposes of appellate review, we rely on the standard articulated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The standard promulgated in *Curcio* permits the immediate appeal of an otherwise interlocutory order under "two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id.

In the seminal case of *Madigan* v. *Madigan*, supra, 224 Conn. 753, our Supreme Court "applied the *Curcio* standard to determine whether, in the context of a dissolution case, an order of temporary [*pendente lite*]

custody was a final judgment for purposes of appeal. . . . Relying on the second prong of the *Curcio* test, [our Supreme Court] concluded in *Madigan* that 'deny[ing] immediate relief to an aggrieved parent [would interfere] with the parent's custodial right over a significant period [of time] in a manner that [could not] be redressed by a later appeal.' Id., 756. Even 'a temporary custody order may have a significant impact on a subsequent permanent custody decision . . . [by] establish[ing] a foundation for a stable long-term relationship that becomes an important factor in determining what final custodial arrangements are in the best interests of the child.' Id., 756–57; see General Statutes § 46b-56. [Our Supreme Court] concluded that temporary custody orders did 'so [conclude] the rights of the parties that further proceedings [could not] affect them' . . . and, therefore, they were final for purposes of appeal." (Citations omitted; emphasis added; internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 402–403, 773 A.2d 347 (2001). Subsequently, in *Taff* v. *Bettcher*, 243 Conn. 380, 703 A.2d 759 (1997), our Supreme Court extended the principles derived from *Madigan* to temporary orders in the context of postdissolution disputes.

In the present case, the considerations that influenced the *Madigan* court are inapplicable. *Madigan* involved a situation in which the plaintiff father and defendant mother had requested that the court enter pendente lite orders with respect to their minor children during the pendency of the parties' marriage dissolution proceedings. After conducting a hearing where both parties testified and presented evidence, the court granted joint legal custody, with primary physical custody awarded to the defendant. It was within that context that the court in *Madigan* concluded that temporary custody orders, namely, pendente lite orders, constituted a final judgment for appeal.

Consideration of "the irreparable consequences of a temporary custody order for that relationship"; *Madigan* v. *Madigan,* supra, 224 Conn. 756; and the need to preserve the parent-child relationship; id.; formed the basis of our Supreme Court's decision in *Madigan.* In so holding, the *Madigan* court provided that "a temporary order of custody is a final judgment for the purpose of an immediate appeal because a parent's custodial rights during the course of dissolution proceedings cannot otherwise be vindicated at any time, in any forum." Id., 753–54. Significantly, our Supreme Court was greatly concerned with the fact that "a temporary custody order may have a significant impact on a subsequent permanent custody decision." Id., 756–57.

Contrary to the situation in *Madigan,* where a full hearing on the pendente lite orders had been held, in the present matter a hearing on the merits had not been conducted, nor did the court enter any findings. Rather, as previously set forth, the court ordered the temporary custody and supervised visitation in response to an "emergency" situation with respect to the minor child's suicidal gesture. The court's order was akin to an ex parte order of temporary custody, not a temporary order. In fact, the court stated that "this [entering of the orders] is in terms of an emergency order. I view it as I would had I still been in Juvenile [Court] in terms of an order of temporary custody."

Moreover, unlike the trial court in *Madigan,* the court here explicitly provided that in entering the temporary orders, it was not making any findings and that a full hearing on the matter would be scheduled soon thereafter. Accordingly, the concern that the *Madigan* court expressed with respect to affording an aggrieved parent immediate relief does not apply here because the defendant in this case was scheduled to receive the relief sought, namely, a full hearing on the report and temporary emergency orders.

The *Madigan* court further explained that the pendente lite order constituted a final judgment because it met the second part of the *Curcio* test in that it "so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) Id., 754. In this case, the court's entering of temporary orders cannot meet the second prong of *Curcio* because a hearing directly affecting the rights of the parties was to be held that very next month.[4] Although in *Madigan*, the custodial parent's rights could not "otherwise be vindicated at any time, in any forum," the defendant here was being given the opportunity to be heard and to vindicate her rights with respect to the temporary orders the very next month.[5] Therefore, because the hearing on the merits of the orders had not yet occurred, the defendant's appeal is premature.[6]

Time with one's child has been deemed "not recoverable." *Taff* v. *Bettcher*, supra, 243 Conn. 387. Unfortu-

---

[4] We note that the parties convened for the hearing on the scheduled dates, but the defendant's obstreperous behavior in court prevented a hearing on the merits from occurring and forced the court to discontinue the hearing and to recuse herself.

[5] Given the pending hearing on the merits, the defendant also cannot satisfy the first standard set forth in *Curcio*, namely, whether "the order or action terminates a separate and distinct proceeding . . . ." *State* v. *Curcio*, supra, 191 Conn. 31.

[6] We distinguish this matter from that before our Supreme Court in *Taff* v. *Bettcher*, supra, 243 Conn. 380. In *Taff*, our Supreme Court addressed whether a postdissolution order precluding the parties from filing any motions pertaining to the custody of their son for one year constituted an appealable final judgment. On the basis of the significant effect on the rights of the parties, our Supreme Court concluded that the order indeed was a final judgment for the purposes of an immediate appeal. Particularly, our Supreme Court held that "a court order barring the parties for one year from seeking review on the issues of custody and visitation may interfere with a parent's custodial rights over a significant period in a manner that cannot be redressed at a later time." Id., 387.

Contrary to the situation in *Taff*, the rights of the parties here are not so affected. Given that the court scheduled a hearing for the next month, the parties had legal redress available to them. Moreover, we note that the

nately, the defendant did not avail herself of a hearing on the merits, but rather brought an appeal. The labeled "temporary order" of the court, which provoked the appeal, is still in place, and may not have been, had there been a hearing on the merits.[7] The predictable high conflict, overlitigated posturing of the parties in this case cannot be in the child's best interest. The court's continuing duty to fashion relief *for the child* "requires a flexible, individualized adjudication of the particular facts of each case . . . ." (Internal quotation marks omitted.) Id.

The "label" of "temporary custody" utilized by the court here does not ensure appealability. See *Rosenfield* v. *Rosenfield*, 61 Conn. App. 112, 117–18, 762 A.2d 511 (2000). The authority of the court to respond to protect the child is implicit in the mandate of the statutes to act in the best interest of the child. See General Statutes § 46b-56. That authority must be used to protect a child from behavior that compromises the emotional well-being of the child. The court attempted to manage the conflict between the parties by establishing counseling and supervised visitation to test the allegations contained in the very damaging report. The information contained in the report criticized both parents, but recommended immediate relief for the child from the unrelenting criticism of the defendant.[8]

---

trial court in *Taff* was not faced with an emergency situation, as in the present case.

[7] We reiterate that the defendant's behavior prevented the court from conducting a hearing on the merits.

[8] The dissent seems to focus on the vindication of the mother's rights and a parent's lost time with the minor child. Although we recognize those rights to be important, we focus primarily on the need for appropriate judicial intervention to provide immediate protection for children while also ensuring all family members a timely disposition of custody issues. We favor a jurisprudence that recognizes a child's compressed sense of time while protecting the rights of all family members. If we follow the path suggested by the dissent, we enable serial litigation and extend the conflict, which harms the child. At the conclusion of this matter in this court or in the Supreme Court, the child's access to his parents will have to be determined again within a trial court proceeding.

Moreover, the court immediately recognized the requirement that a hearing be scheduled to test the perceived claims of the parties. When the issue of the minor child's fragile mental health status was brought to the attention of the court, the court's first step in gathering information was its order for a custody and visitation evaluation. The court's second step, at the October 10, 2001 in-court status conference to review that report, provoked the court to take steps to safeguard the child until a hearing could be arranged. That action resembles an ex parte order where a hearing is scheduled pursuant to a statutory mandate or whenever required by law, within a reasonable time based on the court's schedule and that of the parties.[9] See General Statutes §§ 46b-15, 46b-129 (b). In this case, the court scheduled a three day seriatim hearing within one month of that order. Not only did the schedule give the defendant time to prepare for the hearing and to review the report of family services pursuant to § 46b-7, but also afforded her the opportunity to consult with counsel if she so elected.

We therefore conclude that this matter fails to meet the standards set forth in *Curcio* and *Madigan* and, accordingly, dismiss the appeal for lack of a final judgment. We further note that even if we assume arguendo that the appeal arose from a final judgment, we would nonetheless decline to address its merits. "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . .

---

[9] The case of *In re Shamika F.*, supra, 256 Conn. 383, supports our holding. In *In re Shamika F.*, the court required that the appeal be filed in response to a temporary custody order rather than at the time parental rights had been terminated. Id., 385. The order in that case was entered after a hearing for which a predicate ex parte order of custody in the department of children and families had been granted. Id., 385–86. It was the order entered after the hearing, not the ex parte order entered before the hearing, from which the appeal should have been brought.

The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Wittman* v. *Krafick*, 67 Conn. App. 415, 416, 787 A.2d 559 (2001), cert. denied, 260 Conn. 916, 797 A.2d 516 (2002). "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) Id. In this case, we could not reach the merits of the defendant's claims because her brief is devoid of any legal authority or analysis, therefore rendering her claims abandoned.

The appeal is dismissed.

In this opinion MIHALAKOS, J., concurred.

SCHALLER, J., dissenting. The majority dismisses the defendant's appeal for lack of a final judgment. Because I conclude that the trial court's order was a final judgment, I respectfully dissent.

The procedural history of the case as it concerns this appeal is troubling in many respects. Well over one year ago, in April, 2001, the issue concerning supervised visitation arose. The family services report ordered by the trial court was not completed for more than four months, although the subject was considered to be urgent. Even after the report was finished, one and one-half months elapsed before a hearing was convened. At the hearing, on October 10, 2001, the parties, both pro se, were given the report *for the first time.* Although the trial court gave the defendant, Rose Li-Hwa Strobel, a short time during a recess to read the report, the

court denied her request for a meaningful hearing at which she could challenge the report prior to the entry of an order. Although six months already had elapsed in this *urgent* matter since the issue of supervised visitation first arose, the trial court apparently believed that the matter was *again* so *urgent* that an emergency order was needed. Stating that the court was *"not going to litigate the report right now,"* the trial court ruled against the defendant's interest based on, as the majority states, "the severity of the allegations contained in the report," and indicated that a hearing on the merits would be held in November, 2001. A full hearing on the merits still has not been held. The majority raises the final judgment issue sua sponte and dismisses the defendant's appeal.

I disagree with the majority's conclusion that the order in this case is not a final judgment. I believe that the logic formulated in *Madigan* v. *Madigan*, 224 Conn. 749, 620 A.2d 1276 (1993), controls this case and that, under the *Curcio* test; *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); the order is a final judgment.

As did the court in *Madigan*, I conclude that there is a final judgment in the present case because the trial court's order so concluded the defendant's rights that further proceedings cannot affect them. The court awarded sole custody to the plaintiff, Kevin L. Strobel, and ordered that the defendant, the former custodian of the child, be restricted to supervised visitation with the child. Although that order was termed temporary and deemed necessary in this *emergency* situation, the order nonetheless governed the ability of the defendant to interact with her child for whatever period of time elapsed until the next hearing was held.

Although the majority views the scheduling of the hearing *on the merits* as a bar to meeting the second factor of the *Curcio* test, I do not agree. The majority,

in relying on the later scheduled hearing, overlooks the fact that until such time as the hearing is in fact held, the defendant is left without any redress from the court's ruling. I conclude that the *emergency* order meets the second factor of the *Curcio* test because no further proceeding could in any way alter the defendant's access to her child for the period prior to the next hearing. Although the hearing, when held, will indeed affect the *subsequent* rights of the defendant, the result of that hearing will have no retroactive effect or capacity to replace time in which the defendant's visitation has been restricted by supervision. Therefore, the court's order did so conclude the defendant's rights that later proceedings could not affect them.

As stated in *Madigan*, "[a] lost opportunity to spend significant time with one's child cannot be replaced by a subsequent order of custody . . . ." *Madigan* v. *Madigan*, supra, 224 Conn. 756. Although the *Madigan* court did state that in the context of a pendente lite matter in a dissolution proceeding and after a hearing on the issue, the reasoning is applicable in the present case. Time with a child is defined by the minutes and hours that a parent enjoys with the child; custody and supervision relate to the ability of a parent to stand alone as the guardian of his or her offspring. The impact of a temporary order should not be overlooked in favor of the resolution of a full hearing once the *Curcio* test is satisfied. As stated in *Madigan*, "[t]o deny immediate relief to an aggrieved parent interferes with the parent's custodial right over a significant period in a manner that cannot be redressed by a later appeal." Id.

Similarly, the reasoning in *Madigan* should be applied to the present case because, as that case stated, "a temporary custody order may have a significant impact on a subsequent permanent custody decision. . . . [A]n order of temporary custody may establish a foundation for a stable long-term relationship that

becomes an important factor in determining what final custodial arrangements are in the best interests of the child. . . . Accordingly, not only is any impropriety in granting an initial order for temporary custody not subsequently reversible, but it may also have an adverse spillover effect on the ultimate determination of custody." (Citations omitted.) Id., 756–57. In the present case, which has been, and continues to be, hotly contested, we should not ignore those words.

Guided by the principles articulated in *Madigan*, I conclude that the defendant in the present case has satisfied the second factor of the *Curcio* test. I also would note that although the majority's position may seem persuasive in light of the scheduling of a full hearing within one month in this case, such considerations of time are not relevant under the *Curcio* test. I also note that despite one unsuccessful attempt to hold a full hearing, the temporary order has continued in effect for nearly nine months.

As stated previously, despite any further hearing that may occur, no prospective order that may enter can affect the time that has elapsed prior to the entry of that order in which the defendant has been limited to supervised visitation with her child. In light of that reality, if the defendant's appeal is dismissed, the defendant will be left with no way to seek redress from the court's order. Despite the possible future modification of the orders that may come with the subsequent hearing, such a result is not preferable.

Finally, although neither of the pro se parties has briefed the issues as fully and adequately as we might want, the defendant's claims on appeal are sufficiently clear and understandable for us to address them. The defendant's first claim is that she did not receive a copy of the family relations report, on which the trial court's orders appear to have been based, until just before the

hearing in question took place, and that she did not have an adequate opportunity to review the report in preparation for the hearing. The second claim is that her due process rights were violated when the trial court modified the custody and visitation orders without the proper pleadings having been filed, and without giving her reasonable notice and an opportunity to be heard. The third claim is that the trial court ordered supervised visitation despite the fact that a similar motion previously had been denied. The issues should be addressed on their merits.

For the foregoing reasons, I respectfully dissent.