DEBRA A. BRENNAN *v.* GILBERT A. BRENNAN, JR.
(AC 23120)

Dranginis, Flynn and Bishop, Js.

Argued June 9—officially released September 21, 2004

*Lori Welch-Rubin,* for the appellant (plaintiff).

*Carl P. Fortuna, Jr.,* for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Debra A. Brennan, appeals from the judgment of the trial court awarding the parties

joint legal custody of their minor child and awarding primary physical custody to the defendant, Gilbert A. Brennan, Jr. On appeal, the plaintiff raises the following claims: (1) the court improperly granted temporary physical custody to the defendant, who resided in Rhode Island, without giving proper weight to the original order awarding sole physical and legal custody to the plaintiff after a fully contested dissolution proceeding; (2) the court misapplied the *Ireland-Tropea* factors[1] by failing to consider the legal and factual significance of the defendant's earlier relocation to Rhode Island when it awarded the parties joint legal custody and awarded primary physical custody to the defendant; and (3) the court abused its discretion in finding that the defendant had met his burden of proving that the minor child's relocation to North Carolina with the plaintiff was not in the child's best interest. We affirm the judgment of the trial court.

The parties' ten year marriage was dissolved on April 16, 1993, whereupon the court granted sole legal and physical custody of the parties' two and one-half year old son to the plaintiff mother after finding, inter alia, that "the defendant's deficiencies in his ability to communicate with his wife and his loss of temper and the ensuing violence were the major factors in the breakup [of the marriage]." The defendant was granted visitation rights for every other weekend and for various other times. During the parties' separation, preceding their final dissolution, the defendant moved from East Haddam to Westerly, Rhode Island, a town located on the border of Connecticut and Rhode Island. The defendant's Rhode Island residence, at least in part, contributed to the court's decision to grant the plaintiff sole custody. The court stated that "[b]ecause of the defen-

[1] See *Ireland* v. *Ireland*, 246 Conn. 413, 431–32, 717 A.2d 676 (1998) (en banc); *Tropea* v. *Tropea*, 87 N.Y.2d 727, 740–41, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996).

dant's inability to adequately communicate with the plaintiff and the distance that the parties live from each other, it would not be in the best interest of the minor child to continue [joint custody]. Therefore, sole custody of the minor child is awarded to the plaintiff mother."

In May, 2001, the plaintiff informed the defendant that she and her immediate family, which included her husband, her seven year old twin daughters and her son, who is the child of both the plaintiff and the defendant, were moving to North Carolina to secure more stable employment. In June, 2001, the defendant filed a motion to modify custody, in which he requested that the court transfer custody of the minor child to him and that it restrain the plaintiff from leaving the state. The court held a hearing on this motion on July 16, 2001, in which it orally told the plaintiff that she must file a motion to relocate, and it also informed her that she "had no authority" to move to North Carolina with the minor child. The court's "order," however, was not noted in the court file, and the notation made by the court clerk on the defendant's motion itself stated that the motion was marked "off" on July 16, 2001. The plaintiff filed a motion to modify the defendant's visitation schedule because of her relocation, which was assigned for a hearing on August 6, 2001. At that hearing, the court ordered that it would take no action on the plaintiff's motion pending a relocation study, followed by a full hearing, and that "existing orders" were to remain in effect. The court appointed an attorney for the minor child. The court also orally instructed the plaintiff for a second time that she was not to relocate without the court's permission. This "order" was not entered by the clerk in the court docket sheet.

Shortly thereafter, the plaintiff and her family went to North Carolina, and the defendant filed an ex parte emergency motion for custody. The court, on August

24, 2001, denied the motion, ex parte, and scheduled the matter for a September, 4, 2001 hearing, after which the parties were given joint legal custody, and the defendant was granted primary physical custody in Rhode Island pending a full hearing and a relocation study. The full hearing on the matter began on May 7, 2002. The court heard three days of testimony and issued its written memorandum of decision on May 24, 2002, awarding the parties joint legal custody of the minor child with primary physical custody awarded to the defendant. This appeal followed.

I

The plaintiff first claims that after the "abbreviated" September 4, 2001 hearing, the court improperly granted temporary physical custody to the defendant, who resided in Rhode Island, without giving proper weight to the original order awarding sole physical and legal custody to the plaintiff after a fully contested dissolution proceeding. The defendant argues that the plaintiff is precluded from raising any issues related to the court's temporary custody award because the plaintiff failed to appeal from that order within twenty days from its entry. In the alternative, the defendant argues that any issue related to the temporary custody order is moot now that a full hearing on the merits has taken place and the court has issued permanent custody orders. We agree with the defendant that the appeal period on this claim has run, and the plaintiff is barred from raising an issue concerning the court's temporary custody order.

We begin our analysis by stating the rule that, with very limited exceptions, appeals shall be taken only from final judgments. See General Statutes §§ 51-197a and 52-263; see also Practice Book § 61-1. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and

distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In dissolution cases, our Supreme Court has permitted immediate appeals of certain temporary orders, regarding them as final judgments. See, e.g., *Hiss* v. *Hiss*, 135 Conn. 333, 336, 64 A.2d 173 (1949) (temporary order of support and alimony appealable); *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993) (temporary custody orders appealable); but see *Strobel* v. *Strobel*, 73 Conn. App. 428, 434, 808 A.2d 698, cert. granted, 262 Conn. 930, 814 A.2d 383 (2002), appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003) (emergency order of temporary custody brought about by child's suicidal gesture not appealable where hearing on merits scheduled for following month).

Our Supreme Court discussed the immediate appealability of temporary orders of custody in *Madigan* v. *Madigan*, supra, 224 Conn. 749. In *Madigan*, the plaintiff father asked for joint custody of two of the parties' minor children, with each parent having the children for three day periods, and the defendant mother asked for sole custody, with visitation rights assigned to the plaintiff. Id., 751–52. The court ordered joint custody, with primary residence with the defendant, and granted visitation rights to the plaintiff. Id. The Supreme Court was deeply concerned that "a temporary custody order may have a significant impact on a subsequent permanent custody decision." Id., 756–57. Accordingly, it determined that the trial court's "temporary custody orders" were immediately appealable.[2] Id., 757.

Our issue concerning the plaintiff's first claim, then, is whether the temporary custody order entered by

[2] The court also reported that an inquiry into the law of other jurisdictions supported its conclusion that temporary custody orders are appealable immediately. See *Madigan* v. *Madigan*, supra, 224 Conn. 757 n.9.

the Superior Court is a final judgment for purposes of appeal. As our Supreme Court explained in *In re Shamika F.*, 256 Conn. 383, 773 A.2d 347 (2001), "temporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected . . . and, further . . . an immediate appeal is the only way to ensure the protection of the best interests of children." (Citation omitted; internal quotation marks omitted.) Id., 385. "[I]n order to protect the parent's interest in retaining custody of the child, an order of temporary custody is a final judgment for purposes of appeal. That reasoning means, moreover, that any party with standing to challenge that order by appeal must do so at that time." Id., 405.

In both *Madigan* and *In re Shamika F.*, the court was concerned that the important rights of both the parent and the child in the parent-child relationship were protected adequately. That rationale is no less applicable to this case. A parent who, as a result of a temporary order, loses primary physical custody and wants to take advantage of the burden shifting and *Ireland-Tropea* factors must appeal the temporary order in a timely fashion or lose whatever advantage might arise from being the custodial parent. To wait until the court enters a permanent order before filing an appeal results in a less attenuated passage of time during which the child becomes accustomed to a new primary custodial home. The child who is the subject of the custody dispute has the right to some peace of mind and stability, and a timely appeal of a temporary order is the only way to attenuate any possible dislocation or disruption of the child's life. The longer the child is placed in some new setting in which he may be content, the more harmful the effects of a second uprooting. That is the situation we now face. No appeal

from the temporary order was taken by the plaintiff until nearly nine months had passed from the entry of the September 4, 2001 temporary order. As we write, almost three years have passed in which the child has been located with the defendant in Rhode Island.

In this case, the plaintiff did not appeal from the temporary custody order awarding primary physical custody to the defendant. We conclude, therefore, that the plaintiff's collateral attack on the temporary custody order, made as part of her appeal of the permanent order, is a procedurally impermissible substitute for a timely appeal from the temporary order of custody, and we are without authority to consider this claim. See *In re Shamika F.*, supra, 256 Conn. 407–408.

## II

The plaintiff next claims that the court misapplied the *Ireland-Tropea* factors by failing to consider the legal and factual significance of the defendant's earlier relocation to Rhode Island when it awarded the parties joint legal custody and awarded primary physical custody to the defendant. The defendant responds by arguing that once the temporary orders were in place on September 4, 2001, joint custody with his primary physical custody became the law of the case. Accordingly, he argues that, because any error that occurred in the September 4, 2001 temporary order cannot be raised in this appeal, the court was, at the time of the May 7, 2002 proceeding, "hearing a matter that involved joint custody of the minor child, whose primary residence was with the father . . . ." On the basis of our analysis in part I, we agree with the defendant.

As we explained in *Bretherton* v. *Bretherton*, 72 Conn. App. 528, 536, 805 A.2d 766 (2002), "[r]elocation cases . . . present some of the most complicated problems that courts are called on to resolve. See *Ireland* v. *Ireland*, [246 Conn. 413, 421, 717 A.2d 676 (1998) (en

banc)]; *Tropea* v. *Tropea*, 87 N.Y.2d 727, 736, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996) . . . . Usually, in relocation cases, there is no good or right answer, especially for the child. That is so regardless of the level of parental conflict in the postjudgment family. The decision of the custodial parent to relocate causes a disruption and reordering of the child's relationship with the noncustodial parent. Our Supreme Court in *Ireland* v. *Ireland*, supra, 431–32, adopted a burden shifting approach and the factors set forth by the New York Court of Appeals in *Tropea* to address and to analyze fairly the tangled myriad of issues that arise when a postjudgment, custodial parent intends to relocate." (Internal quotation marks omitted.)

In *Ireland*, our Supreme Court held that "a custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose. Once the custodial parent has made such a prima facie showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." *Ireland* v. *Ireland*, supra, 246 Conn. 428. At the time it decided *Ireland*, our Supreme Court adopted the factors enumerated in *Tropea* v. *Tropea*, supra, 87 N.Y.2d 727. "These factors are: '[E]ach parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.' . . .

[Another relevant factor is] 'the negative impact, if any, from continued or exacerbated hostility between the custodial and noncustodial parents, and the effect that the move may have on any extended family relationships.' " (Citation omitted.) *Ireland* v. *Ireland,* supra, 431–32, quoting *Tropea* v. *Tropea,* supra, 740–41.

Whether the court properly applied the *Ireland-Tropea* factors before its September 4, 2001 order transferring temporary physical custody to the defendant, who no longer resides in Connecticut, cannot be reviewed because no appeal was taken from that order. To challenge that order, the plaintiff was required to file a timely appeal. See part I. Additionally, should we view this claim as relating solely to the May 14, 2002 memorandum of decision, giving permanent physical custody to the defendant, we must also conclude that the *Ireland-Tropea* factors do not apply because, at the time of the May 14, 2002 decision, the defendant had primary physical custody of the minor child, and, therefore, the plaintiff was not the "custodial" parent seeking to relocate.

For the reason stated, we decline further review of the plaintiff's second claim on appeal.

### III

The plaintiff finally claims that the court abused its discretion in finding that the defendant had met his burden of proving that the minor child's relocation to North Carolina with the plaintiff was not in the child's best interest. The defendant responds that the record reflects more than adequate evidence for the court to maintain primary residence with the defendant. We agree with the defendant.

At the time of the May, 2002 hearing, the court was charged with making a determination as to the permanent physical and legal custody of the minor child in

response to both a motion to relocate and a motion to modify custody permanently and to restrain the plaintiff from moving out of state with the child. The custody order existing at the time of the May hearing, however, was one of joint legal custody, with primary physical custody vested in the defendant. The plaintiff was no longer sole custodian; she had not appealed from the September, 2001 decision that removed her as sole custodian and gave the defendant primary physical custody of the minor child. The court was faced with deciding a motion to relocate that was introduced by the now noncustodial parent and additionally with making permanent custody orders. The burden, then, was not, as the plaintiff claims, on the defendant to prove that relocation to North Carolina was not in the child's best interest. Rather, the burden was on each of the parties to prove what was in the best interest of the child.

The authority of a court to render custody, visitation and relocation orders is set forth in General Statutes § 46b-56.[3] "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of [the child's] environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and

---

[3] General Statutes § 46b-56 provides in relevant part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . .

"(b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference . . . ."

. . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *In re Haley B.*, 81 Conn. App. 62, 67, 838 A.2d 1006 (2004).

The plaintiff, seeking a transfer of custody back to her, as well as permission to relocate to North Carolina with the child, and the defendant, seeking a permanent award of primary physical custody, each had the burden of proving what would be in the child's best interest. In reviewing the record, we conclude that the facts as found by the court in making this difficult decision would have supported an award of primary physical custody to either parent. The court concluded, however, that remaining in Rhode Island, and not relocating to North Carolina, would be in the child's best interest, especially in light of the fact that much of his family, including both sets of grandparents, resided in Rhode Island. Specifically, the court found that the "[p]laintiff and [the] defendant both have family in the Westerly area. All four grandparents live in the immediate area. The paternal grandfather seems to be the most involved with [the child] and contributes greatly to his well-being." Additionally, the court found that "[t]he child was familiar with and happy and comfortable in the father's [Rhode Island] home and the surroundings. . . . At the time of the [modification and] relocation hearing, he had lived there for eight [or] nine months. He was going to the neighborhood Westerly school. The child wanted to live with his father. Both the attorney for the minor child and the guardian ad litem urged the

court to find it was in the best interest of the child to continue living with his father in Westerly."

The findings of the court amply support this conclusion, and the court did not abuse its discretion in ordering that the defendant retain primary physical custody, with both parties sharing legal custody, of their child.

The judgment is affirmed.

In this opinion DRANGINIS, J., concurred.

BISHOP, J., concurring. Although I agree with my colleagues that the judgment of the trial court should be affirmed, I write separately because I would follow a different decisional pathway to affirm that judgment. Let me first state the areas in which I agree with the majority. As the majority opinion notes, the plaintiff's present attack on the temporary custody order entered by the court on September 4, 2001, must fail because it is untimely. As we have been instructed by *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993), and *In re Shamika F.*, 256 Conn. 383, 385, 773 A.2d 347 (2001), temporary custody orders are final judgments for the purposes of appeal and, if a timely appeal is not filed, the order is not subject to a later collateral attack.

I depart, however, from my colleagues' conclusion that once the court modified the marital dissolution decree, granting the parties joint legal custody of the child and granting the defendant primary physical custody of the child, the decisional route set forth in *Ireland* v. *Ireland*, 246 Conn. 413, 428, 717 A.2d 676 (1998) (en banc), was no longer applicable. To be sure, there is logic to the majority's view. Because the temporary order modifying custody was an appealable final judgment, it is consistent with the finality of that order to consider the modified custodial status of the parents at the time of the final hearing for purposes of an *Ireland* analysis. In other words, there appears to have been

no reason for the court to have accorded the plaintiff the status of custodial parent during the final hearing on the parties' competing motions because, eight months earlier, the court had modified the original dissolution judgment and awarded, inter alia, the parties joint legal custody of the minor child with primary physical custody awarded to the defendant. My difficulty with that analysis is that, in essence, it nullifies the holding and rationale of *Ireland* and would, if correct, have the effect of compelling litigants to appeal from all temporary custody orders that change a child's physical location simply to preserve one's preorder custodial status. I do not think *Ireland* envisions such a result, nor do I think it is a necessary consequence of the cases that hold that temporary custody orders are final for appeal purposes.[1] See *In re Shamika F.*, supra, 256 Conn. 385; *Madigan* v. *Madigan*, supra, 224 Conn. 757.

I would approach that difficult situation differently. As in this instance, when a party files a postjudgment motion to modify the custody provisions of a marital dissolution decree to permit or to prevent the geographic relocation of a minor child, the court is confronted with both a short-term and a long-term responsibility. While often referring the matter for a family services study and appointing an attorney or guardian ad litem for the child in anticipation of a final determination of the operative motions, the court must also issue orders concerning the child's immediate legal and physical custody because of the parents' dynamics. In this instance, for example, the court was confronted with the fact that the custodial parent had already moved to North Carolina. Thus, the court was faced

[1] Perhaps I would find the majority's reasoning more compelling had the record shown that the court conducted an *Ireland* analysis before issuing its interim order. To the contrary, however, the record indicates that the court explicitly declined to conduct that analysis. I recognize that prior to issuing interim, stabilizing orders, the court infrequently has the time that is required to conduct an *Ireland* hearing properly.

with the choice of either conducting an immediate full-scale hearing on the parties' competing custody claims without the benefit of a family services study or the meaningful participation of a child's advocate or guardian ad litem, or making an interim arrangement pending a final hearing for the child either by permitting the custodial parent to relocate with the child or awarding the parent staying behind temporary physical custody of the child. If the court had chosen the first alternative, there is no question that the burden shifting procedure adopted in *Ireland* would have applied. See *Ireland* v. *Ireland*, supra, 246 Conn. 428. In the latter situation, however, the majority opines that the burden shifting scheme has been made inapplicable by the change in custody made by the interim order. I believe the majority's logic would apply with equal force if the court had permitted the plaintiff to relocate with the child to North Carolina on an interim basis pending a final hearing, so that if the custodial parent had been awarded the right to relocate with the child to North Carolina in September, 2001, by the time of the final hearing in May, 2002, she would no longer have had to prove the reasonableness of that relocation because it had taken place months earlier after which she had been given permission to relocate with the child. That result eviscerates the rationale of *Ireland* because, as we know, in nearly all relocation cases, the court makes interim orders pending the assignment of the operative motions for a final hearing.

Contrary to the outcome determined by the majority, I believe we can honor the relevant holdings of *Madigan* and *In re Shamika F.* and accord *Ireland* its due by holding that at the time of the final hearing on a post-judgment relocation motion, the court should look to the custodial status of each party when the motions were filed and not at the time of the final hearing. See *Madigan* v. *Madigan*, supra, 224 Conn. 757; see also

*In re Shamika F.*, supra, 256 Conn. 385. Thus, the initial burden on the parent seeking to relocate would remain intact. Furthermore, in reaching the question of whether the noncustodial parent has met his or her burden of demonstrating that a well intentioned relocation is not in the child's best interest, the court would have the benefit of the child's experiences up to the day of the final hearing. That is the decisional path followed by the court in this instance. I believe it is the course that is most in harmony with *Ireland* and the one least likely to bring to the court an onslaught of unnecessary litigation and appeals from interim postjudgment custody modification orders.

For the foregoing reasons, I respectfully concur in the result.