MARY ELLEN PRITCHARD *v.* JAMES L. PRITCHARD
(AC 25068)

Flynn, Bishop and Dupont, Js.

Argued May 24—officially released November 22, 2005

*Robert D. Snook*, assistant attorney general, with whom, on the brief were *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellant (state).

*Albert C. Lau*, with whom was *David V. DeRosa*, for the minor children.

*Opinion*

FLYNN, J. This is an appeal by the state of Connecticut, support enforcement services,[1] from the January

---

[1] The word "defendant" as used in this opinion refers to the appellee, James L. Pritchard. The word "plaintiff" as used in this opinion refers to Mary Ellen Pritchard. The state of Connecticut has authority to bring this appeal pursuant to, but not limited to, General Statutes § 46b-231 (t) (3), which provides: "The Attorney General shall . . . (3) Represent the IV-D agency in providing support enforcement services in non-TANF IV-D support cases pursuant to sections 17b-179, 17b-745 and 46b-215," and General Statutes § 46b-231 (u) (1), which provides: "The Department of Social Services may in IV-D cases (A) bring petitions for support orders pursuant to section

12, 2004 interim judgment of the trial court rendered after the Superior Court allegedly "interceded" in a support enforcement action pending before the family support magistrate. The state asks us to consider (1) "[w]hether [General Statutes] § 46b-231 (q) authorizes a trial court to supersede Family Support Magistrate support orders, without notice to affected parties, and based solely upon a withdrawn motion for contempt that was not on the [court's] calendar, when the only matter pending before the court was a motion seeking an order of reconveyance of real property from a third party to the delinquent noncustodial parent on grounds that it was a fraudulent conveyance," and (2) "[w]hether a trial court had the authority under [General Statutes] § 46b-86 to retroactively vacate prior orders of support issued by Family Support Magistrates without notice to parties when the obligor never moved for modification in the Family Support Magistrate Division or filed

46b-215, (B) obtain acknowledgments of paternity, (C) bring applications for show cause orders pursuant to section 46b-172, (D) file agreements for support with the assistant clerk of the Family Support Magistrate Division, and (E) issue withholding orders entered by the Superior Court or a family support magistrate in accordance with subsection (b) of section 52-362." See also 42 U.S.C. § 654 (requiring each state to adopt plan for administration and enforcement of child support obligations); General Statutes § 17b-179 (creating bureau of child support enforcement within department of social services to implement mandates of 42 U.S.C. § 654); General Statutes §§ 46b-207 and 51-1e (granting authority to establish support enforcement services); General Statutes § 46b-55 (a). A person in need of support enforcement services from the state may petition the bureau of child support enforcement pursuant to General Statutes § 17b-179 (h). If accepted, the person will be provided with Title IV-D services, including the obtainment of child support orders for minor children. The enforcement of those orders is the responsibility of support enforcement services pursuant to §§ 46b-207 and 51-1e. The attorney general is responsible for representing both the bureau of child support enforcement and support enforcement services pursuant to §§ 46b-231 (t) and 17b-179. The state has appealed on behalf of the support enforcement services, which is acting on behalf of the plaintiff. The attorneys for the minor children also filed one joint brief in this appeal. The defendant has not filed a brief nor did he appear at oral argument. He did, however, send a letter to this court in which he stated that he was not appealing from the trial court's judgment.

an appeal from any decision of a Family Support Magistrate pursuant to [General Statutes] § 46b-231 (n)." We decline to review the state's claims on appeal. Reviewing the procedural history, the January 12, 2004 interim judgment, the April 26, 2004 judgment and the August 24, 2004 judgment, which affirmed portions of the January 12, 2004 judgment and issued new orders, we conclude that the issues raised by the appeal from the January 12, 2004 judgment are moot. Additionally, we conclude that the January 12, 2004 judgment was not a final judgment from which an appeal could be taken.

The following facts and procedural history are relevant to this appeal. The plaintiff, Mary Ellen Pritchard, and the defendant, James L. Pritchard, were married on May 5, 1979. Two children were born of the marriage. On June 11, 1996, the parties were divorced. Pursuant to the judgment of dissolution, the defendant was ordered to pay, inter alia, child support in the amount of $180 per week and alimony in the amount of $100 per week. An alimony arrearage of $7549.80 was also found by the court, and the defendant told the court that he would continue to refuse to pay the delinquent alimony. In response, certain bank orders were issued. Nevertheless, on November 1, 1996, pursuant to a motion for contempt, the court found the defendant to be in arrears $3600 in child support, $2000 in alimony and $303 in unreimbursed medical expenses. Finding the defendant in contempt, the court issued additional bank orders, transferring certain moneys to the plaintiff. Following the transfer of the bank funds to the plaintiff, which did not clear up the arrearage entirely, the court appointed an attorney for the defendant on March 31, 1997, finding that the defendant was in jeopardy of incarceration for his failure to comply with the orders of the court.

In response to another motion for contempt filed by the plaintiff, the court, *Axelrod, J.*, on November 25,

1997, denied the motion because it concluded that the plaintiff, herself, had failed to comply with the orders of the court regarding the transfer of certain Florida property to the defendant and that her delay had caused the defendant to lose that portion of the property that the plaintiff had been ordered to transfer to him. The court did find, however, that the defendant owed an arrearage of $13,107.95, consisting of $1700 in alimony, $11,160 in child support and $247.95 in unreimbursed medical expenses. The court also stated that, pursuant to the terms of the judgment of dissolution, alimony had terminated on October 10, 1996, and the court ordered the payment on the arrearage to be $35 per week, with an increase as each child reached majority. On September 3, 1998, the plaintiff filed another motion for contempt, which was heard on September 8, 1998. After the defendant failed to appear for the hearing on the contempt motion, the court found that the arrearage was $27,608.70, and it issued a capias, finding the defendant in contempt.

On July 3, 2000, a new capias was issued after it was discovered that the original had been lost. On September 12, 2002, the defendant was arrested and bond was set at $30,000. After setting the bond, the court, *Rodriguez, J.*, referred the matter to the family support magistrate. On September 18, 2002, the family support magistrate, *John. P. McCarthy*, found the defendant in contempt and set a purge figure of $65,588.70, the amount of the support arrearage. The defendant continued to be brought before the court on a monthly basis for review of the contempt finding. On April 2, 2003, the magistrate increased the defendant's purge amount to $70,628.70 and also set a bond of $10,000.

On April 23, 2003, the defendant filed a motion for contempt against the plaintiff, alleging that her failure to transfer the Florida property in a timely manner

amounted to a fraudulent conveyance.[2] On July 30, 2003, during one of the monthly reviews of the defendant's incarceration on the contempt finding, the magistrate found that property owned by the defendant in Bethel had been fraudulently transferred to the defendant's companion, Suzanne Spellman, and the magistrate ordered that the defendant could be released if Spellman placed a mortgage on the property to secure a lien in the name of the plaintiff and then sold the property and paid the plaintiff. On November 26, 2003, the magistrate lowered the defendant's purge amount to zero and set a bond of $30,000. On December 4, 2003, the state filed a motion for reconveyance of the Bethel property with the Superior Court.[3] On December 15, 2003, Spellman and the defendant appeared before the Superior Court for a hearing on the motion for reconveyance. On January 7, 2004, the magistrate lowered the defendant's bond to $5000, and set another review date for the following week, January 14, 2004.

On January 12, 2004, after a hearing on the state's motion for reconveyance, the court, *Shay, J.*, ordered the defendant released from custody and vacated the capias, the bond and all prior findings of contempt. The court also suspended the payment of child support and continued the matter until April 19, 2004. The state filed an appeal from the January 12 judgment. Subsequently, on April 26, 2004, the trial court found that the defendant

[2] The state argues that this motion was withdrawn on May 12, 2003. Although there is a notation to that effect at the bottom of the motion, the case detail sheet does not show that this motion was withdrawn.

[3] The court case detail sheet shows this motion, no. 185, as having been filed on December 4, 2003. The motion in the court's file, however, contains three different date stamps, one on November 14, 2003, one on November 26, 2003, and the last on December 4, 2003. The order to show cause itself also shows that it was signed on November 19, 2003, by Judge Mintz, ordering Spellman and the defendant to appear on December 15, 2003, to show cause why the motion should not be granted. The notice of lis pendens was filed with the Bethel town clerk on November 24, 2003, a certified copy of which is contained in the court file.

had fraudulently transferred the Bethel property to Spellman, but stayed enforcement until it could recalculate the amount of arrearage. On August 24, 2004, the court issued a memorandum of decision in which it reiterated its January 12 orders, recalculated the amount of arrearage and ordered the defendant to make certain payments.

On appeal, the state claims that the court did not have the authority to "intercede" in the support matter that was pending before the magistrate.[4] The state argues that the court gave no notice to the parties that it intended to take action on the "defendant's withdrawn motion for contempt"[5] and that there was no other motion pending before the court under which it could act. Additionally, the state argues that even if the parties had sufficient notice, the regular docket of the Superior Court was the wrong venue for any action on the support orders because no appeal from the magistrate's findings or orders had been taken. We decline to review the merits of the state's appeal because there is no practical relief that we could afford the state or the plaintiff, and, therefore, this appeal is moot.

[4] The state also makes additional claims concerning the retroactive modification of support and other orders of the court contained in two subsequent memoranda of decision dated April 26 and August 24, 2004. The state, although filing an amended appeal form, did not appeal from the later judgments. The only judgment from which an appeal was taken, as stated on the amended appeal form, is the judgment dated January 12, 2004, and that form lists, as the specific action from which the state appeals, the "decision of the [S]uperior [C]ourt to intercede in an action pending before the [f]amily [s]upport [m]agistrate." As such, any claim regarding the propriety of the actions of the court taken after January 12, 2004, cannot be addressed in this appeal. See *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 526–27, 857 A.2d 976 (2004).

The children of the parties also filed a brief as appellees and raise issues as to child support, arrearage and the amount of the lien resulting from the subsequent finding of a fraudulent conveyance. They did not, however, cross appeal or file a direct appeal as appellants, and we therefore do not discuss or decide those issues.

[5] See footnote 2.

As to the issue of whether the January 12, 2004 ruling was an appealable final judgment, the state argues that, pursuant to *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), the interlocutory orders are appealable because the court terminated a separate and distinct proceeding and the orders concluded the rights of the parties. We do not agree. In *Curcio*, our Supreme Court explained that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id. The state's argument revolves around its challenge to the authority of the Superior Court to "intercede" in a matter that is pending before the family support magistrate division of the Superior Court. The state argues that, because the Superior Court took the matter from the magistrate division, that necessarily concluded a separate and distinct proceeding and the rights of the parties.

General Statutes § 46b-231 (d) provides: "There is created the Family Support Magistrate Division of the Superior Court for the purpose of the impartial administration of child and spousal support." General Statutes § 46b-231 (b) (6) provides: " 'Family Support Magistrate Division' means a division of the Superior Court created by this section for the purpose of establishing and enforcing child and spousal support in IV-D cases and in cases brought pursuant to sections 46b-212 to 46b-213v, inclusive, utilizing quasi-judicial proceedings . . . ." General Statutes § 46b-232 provides: "A family support magistrate may alter or set aside (1) any order for payment of support issued by a family support magistrate at any time or (2) any order for payment of support issued by the superior court at any time upon referral of such order by the superior court."

"Our legislature has consistently drafted legislation to state expressly when a court has exclusive jurisdiction. See, e.g., General Statutes § 46b-42 (granting Superior Court exclusive jurisdiction over all complaints seeking dissolution of marriage, decree of annulment or legal separation); General Statutes § 46b-212h (a) (granting family support magistrate division or Superior Court exclusive jurisdiction over child support orders); General Statutes § 52-12 (granting Superior Court exclusive jurisdiction over sale of certain real property)." *Sender* v. *Sender*, 56 Conn. App. 492, 498, 743 A.2d 1149 (2000). Further, in contrast to courts of probate, "[t]he Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter." (Internal quotation marks omitted.) *LaBella* v. *LaBella*, 134 Conn. 312, 316, 57 A.2d 627 (1948). Additionally, General Statutes § 46b-231 (q) provides: "When an order for child or spousal support has been entered against an obligor by the Superior Court in an action originating in the Superior Court, such order shall supersede any previous order for child or spousal support against such obligor entered by a family support magistrate and shall also supersede any previous agreement for support executed by such obligor and filed with the Family Support Magistrate Division."

In its brief, the state alleges: "On November 12, 2003,[6] while the [f]amily [s]upport [m]agistrate action was still proceeding, the [s]tate filed a *separate action* in Superior Court alleging only that the transfer of the commercial property in Connecticut by the defendant to Ms. Spellman was a fraudulent conveyance and seeking an

---

[6] See footnote 3.

order of reconveyance. . . . The state was compelled to bring this *new action* in Superior Court because the jurisdiction of the [f]amily [s]upport [m]agistrate [d]ivision is limited by statute which statute does not grant [m]agistrates authority to order reconveyance of property." (Citation omitted; emphasis added.) This argument by the state is somewhat misleading. The state's motion for reconveyance was not a *separate action* or a *new action*; it was a motion filed in this case, with the same docket number as the pending case. What the state means by *separate* or *new*, we assume, is that the motion was not filed with the magistrate division, but was filed on the regular docket of the Superior Court. The state fails to recognize, however, that the filing of its motion placed this case squarely back on the regular docket of the Superior Court, which, in considering the merits of the state's motion, had to review the case in its entirety.

In addition, in its motion, the state specifically alleged, in part, that the defendant had failed to pay child support in accordance with the orders of the court, that the defendant was in custody pursuant to a capias, that the support arrearage, as of July 30, 2003, was $73,688.20, that bond had been set at $30,000, that the defendant had failed to post bond or to purge his contempt and that the defendant had fraudulently transferred property in Bethel by quitclaim deed to Spellman to keep the plaintiff from "bleeding him dry." The state requested in the motion that the court, inter alia, cite Spellman to appear, order a reconveyance of title, order a sale at public auction and order the net proceeds paid over to the plaintiff. For the court properly to review the allegations of the motion in order to assess the propriety of the relief requested, it had to review the entire file, which was placed before it because of the state's own motion.

At the December 15, 2003 hearing on the state's motion, the state presented detailed evidence concerning the defendant's support arrearage, the findings and orders of the magistrates and the defendant's contempt and incarceration. There also was considerable evidence presented concerning the Bethel property, the value of the property, the mortgage, the liens against the property and the equity in the property, in addition to the transfer of the property from the defendant to Spellman for $10. At the close of the hearing, the court ordered the parties to brief, prior to January 12, 2004, the statute of limitations defense raised by the defendant. It also demonstrated its concern over the defendant's long incarceration, stating that if something was not done to get the defendant out of jail so that he could earn money to pay his child support, the court would consider the matter at a reconvened hearing following the submission of the parties' briefs.[7]

On January 12, 2004, the court reconvened the hearing, stated that it had reviewed the file in full, that

[7] Specifically, the court stated: "I will say this for the record . . . we eliminated debtors' prisons a long time ago. We do not have imprisonment for debt. Bail is supposed to be . . . to secure the person's return to court on the appointed day, to deal with his or her problems. Bail is not to be used as a . . . weapon. . . . We've got a gentleman that has been incarcerated an extraordinarily long time, too long, in my opinion. I think that we need to focus on what's important here. And what's important is, how is he to pay child support? How does he work on these arrearages if he's incarcerated? . . .

"But he's doing nobody any good in jail. And frankly, it is probably one [of] the most awesome powers that a Superior Court judge has; they do not tell you about that, but it is one of the most important, awesome powers that I possess, which is to deprive a human being of his freedom, his liberty. And I take that very seriously. And I, frankly . . . am offended as a citizen, but [also] as a constitutional officer, that this gentleman has stayed in jail and this problem has not been solved in all this time. It's wrong. It's wrong, and if it is not addressed, and it is not dealt with between now and a month from now when I get these briefs, I will . . . reconvene this hearing, and I will do something that I believe is appropriate. . . . So, something is going to be done. If you don't do it, I'm going to do it. All right? This message clear? Everybody get the message?" To which both the state and Spellman's attorney each responded: "Yes, Your Honor."

an injustice had been done by keeping the defendant imprisoned for the last year and one-half and that it was quite upset that nothing had been worked out in the past month. After discussing some of the relevant findings made previously in the case, including the plaintiff's improper dealings concerning the Florida property as found by Judge Axelrod in his November 25, 1997 memorandum, the court stated: "[P]ursuant to my powers regarding § 46b-231 (q), all, all magistrate orders are hereby superseded by this court. The court hereby suspends any further child support obligation on the part of [the defendant] until further order of court . . . . I am [also] vacating the finding of contempt dated September 8th, 1998, and I am holding this case for a determination of the appropriate amount of arrearages accrued as of that date." The court went on to explain to the defendant that he was ordering him released from incarceration and was giving him ninety days to get things together, to get a lawyer, to get a job and to get some documentation to support his case. The court then scheduled another hearing for April 19, 2004. The court, as the basis for its authority to act in this situation, relied on § 46b-231 (q), which gives the Superior Court the authority to supersede any previous orders for support where an action, such as the present action, originated in the Superior Court. See also *Santoro* v. *Santoro*, 70 Conn. App. 212, 214 n.1, 797 A.2d 592 (2002) (plaintiff's motion to open judgment of family support magistrate not necessary because Superior Court has jurisdiction to modify family support magistrate's child support order pursuant to § 46b-231 [q]). No objection was raised by the state, the attorney for the minor child or the attorney for Spellman as to the court's ruling. A timely appeal, however, was filed by the state.

We conclude that the January rulings did not terminate a separate and distinct proceeding or so conclude

the rights of the parties that further proceedings could not affect them, as contemplated by *State* v. *Curcio,* supra, 191 Conn. 30. The court specifically ordered the parties to come before it for another hearing on April 19, 2004, at which time it intended to take evidence on the defendant's ability to meet his financial obligations. Before that hearing was held and the outstanding questions could be resolved, the state appealed. Accordingly, these rulings fail under both prongs of *Curcio,* and the appeal must be dismissed. See *Strobel* v. *Strobel,* 73 Conn. App. 428, 437, 808 A.2d 698, appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003); *Bucy* v. *Bucy,* 19 Conn. App. 5, 560 A.2d 483 (1989).

The state also asks that we determine whether the court had the authority to vacate the contempt finding and to suspend temporarily the defendant's child support obligation and his arrearage payments while hearing the state's motion for reconveyance. We decline to make any determination as to the propriety of the court's actions on January 12, 2004, because there is no practical relief that we could offer on appeal, the state having failed to appeal from the court's subsequent judgments in this case. See *Rocque* v. *DeMilo & Co.,* 85 Conn. App. 512, 526–27, 857 A.2d 976 (2004).

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the

determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; internal quotation marks omitted.) *New Image Contractors, LLC* v. *Village at Mariner's Point Ltd. Partnership*, 86 Conn. App. 692, 698, 862 A.2d 832 (2004).

In its subsequent judgment of August 24, 2004, the court specifically "confirm[ed] its order of January 12, 2004, opening the judgment of the court and vacating the earlier finding of contempt, the capias, and the finding of an arrearage as of September 8, 1998." At that time, the court also rendered judgment retroactively modifying the defendant's child support order, finding that the defendant's arrearage was $57,506.24 and ordering the defendant to pay the first $20,000 of arrearage within six months, with the balance paid at the rate of $10 per month. That subsequent judgment was not appealed from by the state or the plaintiff. A reversal of the January 12, 2004 judgment would have no effect on the August 24, 2004 judgment, which constituted a new judgment confirming, in part, the judgment of January 12, 2004, and issuing new orders. Therefore, the failure of the state to challenge the subsequent judgments on its appeal form has rendered this appeal moot. Furthermore, the January 12, 2004 judgment did not so terminate a separate and distinct proceeding or so conclude the rights of the parties that further proceedings could not, and did not, affect them. See *State* v. *Curcio*, supra, 191 Conn. 31.

The appeal is dismissed.

In this opinion the other judges concurred.