******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH LINEBERRY *v.* JESSICA ESTEVAM
(AC 35038)

Bear, Keller and Dupont, Js.*

*Argued January 13—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of Middlesex, Calmar, J. [judgment]; Aurigemma, J. [motions for modification and to reargue].)

*Monica Lafferty Harper*, for the appellant (defendant).

*Kelly S. Therrien*, with whom were *Jason J. Lewellyn* and, on the brief, *Richard S. Sheeley*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Jessica Estevam, appeals from the postjudgment order of the trial court modifying the custody order with respect to the parties' minor child and from the court's denial of her motion to reargue the postjudgment order. The order from which the defendant appeals changed the child's primary residence from the defendant's home in East Hampton to the home of the plaintiff, Joseph Lineberry, in Durham, modified the defendant's right of access to the child, and terminated the plaintiff's child support obligation. The defendant claims that the court: (1) improperly conducted a custody hearing to a final conclusion prior to the family relations report being filed in violation of General Statutes § 46b-7; (2) violated the defendant's rights to due process of law pursuant to the equal protection clause of the state and federal constitutions by proceeding with a custody hearing in contravention of § 46b-7, by failing to follow proper short calendar procedures, by failing to provide proper notice to the defendant of the hearing, and by denying the defendant's request for a one week continuance in order to obtain counsel; and (3) abused its discretion when it denied the defendant's motion to reargue. We agree that the court abused its discretion in denying the defendant's motion to reargue, which advised the court that the family relations report had not been filed and that it had proceeded to a final determination on a modification of custody orders in violation of § 46b-7.[1] Accordingly, we reverse the judgment of the trial court.

The following facts, which either were found by the court or are undisputed in the record, and procedural history are relevant to our resolution of the defendant's claims. The plaintiff and the defendant, who were never married, are the parents of one minor child, a daughter born in 2005. A judgment was entered by agreement of the parties on March 16, 2009, in which both parties were awarded joint legal custody, with the defendant maintaining the primary residence of the child. The plaintiff was awarded liberal access to the child. The parties also were ordered to "advise and consult one another concerning the major developmental issues of their [child's] life." The plaintiff also was ordered to pay weekly child support to the defendant.[2]

On April 10, 2012, the defendant, then self-represented, filed an application for an ex parte temporary injunction and a motion for modification of the custody order, seeking sole custody and more restrictive access to the child by the plaintiff. Her ex parte application was denied; the motion for modification was scheduled for a hearing. On April 16, 2012, an initial hearing on the defendant's motion for modification was held. The plaintiff appeared represented by counsel. The defendant was self-represented. The court, *Munro, J.*, did not issue any orders modifying the judgment at that

time, but did reappoint Attorney Sue A. Fillmore Cousineau as guardian ad litem for the child. After the parties met with a family relations officer to discuss each party's position, the court ordered the matter referred to the family relations division for a full custody evaluation. The court also scheduled a "report back" hearing date of August 13, 2012.[3] Subsequently, on April 23, 2012, the plaintiff also filed a motion for modification of custody and child support, seeking to have the child's primary residence designated with him and to have his child support obligation terminated. His motion was docketed for May 21, 2012, marked off and not reclaimed.

During the April 16, 2012 hearing, the court, *Munro, J.*, concerned that the defendant was self-represented, indicated to her that the evaluation would require her to attend appointments, to provide family relations with information and to open her home for a visit. Addressing the defendant, the court cautioned: "[B]ecause you don't have a lawyer, I want to be very clear about something. . . . If there is no agreement at the end of [the evaluation] and it needs a hearing, a trial, we'll go forward with the trial. So if you're thinking about getting a lawyer, you've got to get one sooner than later." The defendant continued to represent herself until shortly after the August 13, 2012 report back hearing.

The family relations officer assigned to the case, Leslie Kahl, completed a full evaluation. The family relations officer presented her recommendations to the parties, the plaintiff's counsel, and the guardian ad litem on August 3, 2012, ten days prior to the scheduled August 13, 2012 "report back" date. Her report, however, was not filed and copies of it were not provided to the parties at that time, or before the August 13, 2012 report back hearing.[4] The report was not filed until September 27, 2012.

On August 13, 2012, the case appeared on the short calendar before the court, *Abrams, J.* The only two items appearing on the calendar for this case were the defendant's ex parte application for custody, which previously had been denied, and the notation, "Reference to Fam Rel Div," a means of coding the report back date previously established by Judge Munro. Neither the defendant's nor the plaintiff's motion for modification was printed on the calendar. At the calendar call, the plaintiff's counsel, Attorney Lisa Faccadio, the guardian ad litem, and the defendant were present. When the case was called, the guardian ad litem indicated to the court, "Your Honor, that is a pro se party and [the plaintiff's counsel] who is not in the room. But it has to do with a child who needs a decision about school. I wondered if it was possible—we have another one, [the plaintiff's counsel] and I, referred to Judge [Julia L.] Aurigemma at 10:30. Could this one go right after that to her?" Judge Abrams approved the referral to

Judge Aurigemma, subject to her agreeing to hear the matter. The plaintiff's counsel then advised the court, "Both are going to be relatively short, Your Honor." No inquiry was made of the defendant regarding the proposed referral or whether she agreed to it. She remained silent during the entire exchange with Judge Abrams.

When the parties and the guardian ad litem appeared before Judge Aurigemma, the plaintiff's counsel told the court that motions had been pending for "many, many months," that the parties "have a family relations call back," and that they "were all present last week." The plaintiff's counsel, who did not advise the court that the earlier proceeding was not a court date, but a family relations conference, also stated that "this is an emergency issue with respect to the child's school and Ms. Cousineau, as [guardian ad litem], I would just like to call her to the witness stand, if the court is prepared."[5] The court did not make any inquiry of the defendant.

The plaintiff's counsel proceeded to call the guardian ad litem, the plaintiff's only witness. The plaintiff did not introduce any exhibits. The guardian ad litem stated: "[The family relations officer] did a full family relations evaluation, and we had a call back meeting where she told us her recommendations and handed it out to us." She testified that the primary issue before the court was the educational concern, because although the child previously was enrolled in the Portland school district, neither parent resided in that district. She indicated that the Portland school district was aware of that fact, so "a decision needs to be made about where [the child is] going to stay," and that this issue was a major concern.

The guardian ad litem then testified that she agreed with the recommendations of the family relations officer that the child attend school in Durham, the school district where the plaintiff resided.[6] She opined that she was "concerned about [the defendant's] ability at this point to adequately parent [the child] and get her to school and get her what she needs." She then referred to numerous occasions on which the defendant delivered the child to school tardy. She expressed concerns as to the condition of the defendant's pets, the age of the defendant's boyfriend, and the defendant's mental health status. She related her prior observation, at an earlier court date, of "borderline abusive" behavior between the defendant and her brother, who lived with the defendant.[7] At the conclusion of her direct testimony, the guardian ad litem recommended that the custody order be modified to joint legal custody with primary residence with the plaintiff and that the schedule of parental access be modified in accordance with the recommendations of the family relations officer.

Upon the conclusion of the direct testimony of the guardian ad litem, the court invited the defendant to

cross-examine the witness. The defendant asked only three questions addressed to the level of contact between her and the guardian ad litem. Then, in an effort to advise the court of the reasons for her opposition to a change in the child's primary residence, the defendant delivered a lengthy, unsworn narrative, describing her concerns about the plaintiff and the family relations officer's recommendations, which the guardian ad litem had just endorsed. The defendant concluded: "So I am asking you for a week continuance because I've spoken with a lawyer, and he is prepared to represent my case. He needed to get back to me regarding the extent—the magnitude of this case is very big, as you can see, and [Attorney] Monica Harper was not available to give him a decision. She is now available to give him a decision. There will be two attorneys working on my case. I just got the okay from him that he will be representing me. I have a letter from him, and I'm meeting him today at 2 o'clock. So I'm asking for a week continuance from you before my daughter is ripped out of the home. I am with her four days a week. I'm taking her to school. This recommendation in front of you has taken away my Sundays, my Mondays, my Tuesdays. I don't know how my daughter is going to deal with that. I don't think she's going to foster very well with that. So that is my recommendation that I get a week continuance to obtain counsel, that I drop the motion today for the temporary custody and the other motion for primary residence be dropped as I feel that this is a matter much bigger than what is being addressed today in court." The defendant then declined to conduct any further cross-examination of the guardian ad litem. At that point, the court did not rule on her request for a one week continuance to obtain counsel.

The plaintiff's counsel then conducted a brief redirect examination. On redirect, the guardian ad litem testified that she had discussed the defendant's concerns with employees of the Department of Children and Families (department) and with the family relations officer, and that she had "reviewed every issue that [the defendant] has raised about [the plaintiff] and all the issues for the last three or four months." She indicated that she had no concerns about the child's safety at the plaintiff's house. The plaintiff's counsel then inquired of her if it was correct that the family relations office did a "full blown" evaluation, to which she replied, "Yes. It took four months for that evaluation," and went on to indicate that the defendant's concerns had been thoroughly reviewed.

After the plaintiff's redirect examination of the guardian ad litem, the court still did not rule on the defendant's request for a one week continuance or ask the defendant if she had any evidence or witnesses to present. The court did rule on the motions for modification, finding that where the child would attend school had to be decided before August 29, 2012, because that was

when school opened in the judge's town of residence. The court modified the custody order, designating the plaintiff's home as the child's primary residence and granting him final decision-making authority if the parties reached an impasse on major issues, services, or activities. The defendant's access to the child was modified to alternating weekends and two weekdays after school until 7 p.m., or overnight on those two weekdays when school was not in session. The court also terminated the plaintiff's child support obligation.[8]

After the court ruled, the defendant stated, "Your honor, may I interject. . . . May I provide you documentation of these police reports and the way that they talk to each other in front of our child. May I provide you with the [department's] investigation?" The court advised the defendant that it already had ruled, based on the evidence it heard from the plaintiff. The defendant then stated, "I have not had counsel up until this time, throughout this whole process," to which the court responded, "I understand that, but the time to get counsel was, probably, a month ago." No further hearing date was scheduled.

The defendant retained counsel, who timely filed a motion to reargue on August 30, 2012, pursuant to Practice Book § 11-11.[9] The motion claimed that the modified custody orders were entered prematurely in derogation of § 46b-7,[10] and that the defendant had been denied a reasonable opportunity to examine the full family relations evaluation report, which violated the defendant's right to due process. The court denied the motion, without a hearing, on August 31, 2012.[11]

In the court's articulated decision on the modification of custody, it found that the family relations officer did a full study and had a report back meeting a week prior to the August 13, 2012 hearing, at which she told the parties and the guardian ad litem her recommendations and gave them the study. The court indicated there was a need for a swift decision on August 13, 2012, because the first day of school in the town in which the judge resided was August 29, 2012. It then noted that both the family relations officer and the guardian ad litem were recommending that the minor child have her primary residence with the plaintiff, and the plaintiff's proposed orders, which the court entered, adopted the recommendations of the family relations officer and the guardian ad litem. The bases for the recommendations, the court determined, were the concerns about the defendant and her brother, who lived with her, as testified to by the guardian ad litem. The court recounted the statements made by the defendant, who "spoke at length about her concerns about [the child] living with [the plaintiff]," but determined that the family relations officer and the guardian ad litem had spoken at length to employees from the department and concluded that the child's residing with the plaintiff

"would have no negative impact on her health and safety, while her having primary residence with [the defendant] might negatively impact [the child's] school attendance and her health." As to the modification of the custody order, the court concluded, "In light of the fact that [the defendant] had known about the work of the [guardian ad litem] and the ongoing family relations study for some four months, had received the results of the family relations study the prior week, and the fact that school was beginning two weeks from the hearing date, the court did not believe that [the defendant's] request for time to obtain an attorney was timely. The request was made during the hearing."

In the court's articulated ruling on the denial of the motion to reargue, it stated: "One of the bases of the motion to reargue was that [the defendant] did not have counsel. Parties, particularly in the family context, should not be permitted to take their chances without counsel, and get a second bite at the apple with counsel when their self-representation results in an adverse ruling. Based on the opinion of [the guardian ad litem] that the proposed orders were in the best interest of [the child], and her concerns about [the child's] continuing to have primary residence with [the defendant], it is unlikely that the court's decision would have been different even if [the defendant] had been represented by counsel." The court did not modify its previous finding that the defendant had received the results of the family relations study a week before the hearing, and did not address the defendant's claim that § 46b-7 prohibits a family relations matter in which an investigation has been ordered from being disposed of until the report has been filed and the parties have had a reasonable opportunity to examine it. On September 21, 2012, the defendant appealed from the August 13, 2012 postjudgment order modifying custody and the August 31, 2012 order denying her motion to reargue the August 13, 2012 order.

We consider together the defendant's first and third claims that, in violation of § 46b-7, the court prematurely conducted a hearing prior to the family relations report being filed, and that the court abused its discretion in denying the defendant's motion to reargue. The defendant claims that a new hearing is warranted on the parties' motions for modification.[12]

We begin with a discussion of the applicable standard of review. "It is well settled that, in family matters, this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or

whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous. . . . Likewise, [w]e review claims that the court improperly denied a motion for reargument under the abuse of discretion standard. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Citation omitted; internal quotation marks omitted.) *Payton* v. *Payton*, 103 Conn. App. 825, 829, 930 A.2d 802, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007).

General Statutes § 46b-6 authorizes a trial court to order an investigation of any circumstances pertaining to the disposition of a family relations matter.[13] Section 46b-7 requires that once such an investigation has been ordered, the case shall not be disposed of until the report has been filed and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard. The statute specifically mandates how the report of an investigation is to be filed.[14] Prior to 2011, consistent with the language of § 46b-7, Practice Book § 25-60 (a) provided that if the court orders such an investigation, "the case shall not be disposed of until the report has been filed . . . *unless the judicial authority shall order that the case be heard before the report is filed, subject to modification on the filing of the report.*" (Emphasis added.) Unlike the prior version of Practice Book § 25-60, the current version of the rule, in effect when the present case was heard, eviscerated the provision that an order made without benefit of the report be subject to modification upon filing of the report. The deletion of that clause arguably impairs the substantive right granted by § 46b-7. When a statute and a Practice Book rule are in conflict on a matter of substance, the provisions of the statute must prevail. See *State* v. *Morrison*, 39 Conn. App. 632, 634–35, 665 A.2d 1372, cert. denied, 235 Conn. 939, 668 A.2d 376 (1995).

The interrelation of the statute and the Practice Book rule was first addressed in *Duve* v. *Duve*, 25 Conn. App. 262, 267, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S. Ct. 1224, 117 L. Ed. 2d 460 (1992), in which this court held that despite the provision in Practice Book § 479, the predecessor to § 25-60, permitting a court to proceed before the filing of the report, the rule did not "expand, abridge or modify any substantive rights or remedies encompassed by . . . § 46b-7." This court further held that "[t]he procedures set forth in Practice Book § 479 implemented the statute while eliminating any unnecessary delay of the proceedings."[15] We concluded that "there is no conflict between . . . § 46b-7 and Practice Book § 479. The court followed the rules set forth in Practice Book § 479 and proceeded with the hearing only after advising the father that he would be given time to rebut the report." Id., 267–68.[16] Therefore, under

*Duve*, despite the eviscerating amendment to the Practice Book rule in 2011, any court, proceeding on a family relations matter prior to the filing of a report, must remain open to reconsidering its orders and possibly modifying them once the report is filed.[17]

In *Payton* v. *Payton*, supra, 103 Conn. App. 831, this court addressed once again a claim that, while the pre-2011 version of Practice Book § 25-60 was in effect, a trial court improperly had issued custody orders in the absence of a previously ordered report by the family relations division. In that case, the court-ordered report was not completed by the date of the first hearing on the motion for modification. Neither party objected to the issuance of a decision prior to the filing of the report. The court did not receive a report until after it issued its order transferring physical custody to the plaintiff. We determined that there was no evidence to suggest that the court's judgment was not " 'subject to modification on the filing of the report' " and, therefore, noncompliant with the mandates of Practice Book § 25-60 (a). Although the court did not mention specifically the caveat that its judgment may be modified upon receipt of the report, we concluded that even in the absence of the court stating so expressly, no authority existed that held that the judgment was not subject to modification within the meaning of the rule. Accordingly, we determined that it was "pure conjecture to assume that the court would not have been willing to modify the judgment on that basis." Id., 832. Moreover, we noted that the court was not required to obtain the disinterested assessment contained in a report, especially because, in the hearing that was the subject of *Payton*, the court heard three days of testimony from both parties, as well as testimony from the child's guardian ad litem. This court held, "[u]nder such circumstances, in which the defendant did not object at the hearing or otherwise request that the court postpone its decision pending the completion of the report, we cannot say that the court abused its discretion as to this issue." Id., 832–33; see *Cotton* v. *Cotton*, 11 Conn. App. 189, 193, 526 A.2d 547 (1987) (where party did not seek continuance pending recommendation of family relations division, trial court within its discretion not to consider previously ordered report from family relations division before rendering judgment).[18]

In the present case, the testimony of the guardian ad litem, as elicited on August 13, 2012, by the plaintiff's counsel, strongly suggested, albeit erroneously, that the report *had* been filed. The court was never advised otherwise during the hearing. The plaintiff's counsel inquired, "Did [the family relations officer] hold a meeting last week, and did she give her recommendations as to what would happen in this case after a full evaluation?" The guardian ad litem replied that the family relations officer had met with the parties the previous week for a "call back" meeting and presented her rec-

ommendations, and that "[the family relations officer] did a full family relations evaluation, and we had a call back meeting where she told us her recommendations and handed *it* out to us." (Emphasis added.) On redirect examination, the plaintiff's counsel inquired of the guardian ad litem if it was correct that the family relations office had conducted a "full blown" evaluation, to which she replied, "Yes. It took four months for that evaluation," and went on to indicate that the defendant's concerns had been thoroughly reviewed.

In light of the representations set forth previously, it appears that at the hearing on August 13, 2012, the court perhaps was led to the erroneous belief that the family relations report had been filed. Nonetheless, in her motion to reargue that was filed a few weeks after the court issued its ruling, the defendant clearly indicated that the report had *not* yet been filed. This was an undisputed fact that the court had the ability readily to verify simply by checking with the clerk or looking in the court file. Moreover, our review of the transcript of the hearing in this matter does not reveal that despite the fact that the report had not been filed, the defendant had received a full and fair hearing. See *Duve* v. *Duve*, supra, 25 Conn. App. 268. The guardian ad litem testified that she had "talked extensively with family relations," which suggests that she was privy to information with which the defendant was not yet provided, but perhaps would have been contained in the report. The family relations officer did not testify and her recommendations are not in the record. The presentation of the custody issue on August 13, 2012, was entirely one-sided; the court ruled before considering the defendant's request for a continuance for the purpose of obtaining counsel and before she was allowed to present evidence. The unsworn representations, made in narrative form by the self-represented defendant at that hearing, were not evidence.

Also, unlike *Payton*, where this court determined that there was no evidence to suggest that the court's judgment was not subject to modification on the filing of the report and therefore noncompliant with the statutory mandate; *Payton* v. *Payton*, supra, 103 Conn. App. 832; we have such evidence here. The trial court, in its articulation of the denial of the motion to reargue, concluded that it had been sufficient to have given the defendant ample opportunity to cross-examine the guardian ad litem. The court further indicated that it was unlikely that its decision would have been different even if the defendant had been represented by counsel. The court never addressed one of the reasons for which the defendant, now represented by counsel, was seeking reargument, the denial of the opportunity to exercise her statutory right to review and refute the report.

After the defendant obtained counsel and filed a motion to reargue alerting the court to the undisputed

fact that the report had not yet been filed or distributed as of the date of the custody hearing, the court abused its discretion in not correcting its clearly erroneous finding that the parties had been provided with the report,[19] and in not providing the defendant with an opportunity to examine and refute the contents of the report and to argue that the court reconsider its rulings.[20] By not providing the defendant with such an opportunity, the court violated the substantive right granted to the defendant under § 46b-7. The court's error undermines the correctness of its orders regarding custody and access to the parties' minor child as well as the interrelated issue of child support. We are persuaded that the proper remedy is to reverse the judgment of the trial court and to remand the matter to that court to conduct a new hearing on the parties' motions for modification.

The judgment is reversed and the case is remanded for a new hearing on the parties' motions for modification of custody and child support.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Because our resolution of the defendant's claims regarding § 46b-7 and the denial of her motion to reargue requires a new hearing on the parties' motions for modification, we need not address the remaining claims of error raised by the defendant because, being related to the specific manner in which the prior hearing was conducted, they are unlikely to arise during the proceedings on remand. See *In Re Deleon J.*, 290 Conn. 371, 373 n.1, 963 A.2d 53 (2009).

[2] In 2008, the defendant filed an application for custody and child support, and the plaintiff filed an application for custody in the judicial district of Middlesex. The defendant's application, Docket No. FA-08-4005919-S, was ordered consolidated with the plaintiff's application, Docket No. FA-08-4009455-S, by the court, *Calmar, J.*, on January 12, 2009. All pleadings were ordered moved into the latter file.

[3] A "report back date" in family matters is a legal term of art that specifies a date to return to court to ascertain the status of a pending matter, to obtain specific information, or to monitor compliance with court orders. It is not a term used to connote a date scheduled for a full contested hearing. See *Buehler* v. *Buehler*, 117 Conn. App. 304, 313, 978 A.2d 1141 (2009) (trial court ordered report back date for parties to return to court and determine whether financial issue existed); *Strobel* v. *Strobel*, 73 Conn. App. 428, 429–30, 808 A.2d 698 (2002) (trial court denied motion for supervised visitation without prejudice, ordered family relations custody and visitation evaluation, and set date to report back to court two months later, but did not begin custody hearing for four more months.), appeal dismissed, 267 Conn. 901, 838 A.2d 209 (2003); *Daversa* v. *Daversa*, Superior Court, judicial district of New London at Norwich, Docket No. FA-00-0121618-S (January 3, 2008) (trial court ordered report back date to ascertain status of family relations investigation); *Moriello* v. *Moriello*, Superior Court, judicial district of Waterbury, Docket No. FA-98-0147807-S (March 16, 2006) (trial court ordered defendant found in contempt to report back on specified court date to ascertain compliance with child support order).

[4] The written policies of the family relations division on Family Services Comprehensive Evaluations call for a "final conjoint meeting" at which "[the family relations officer] ask[s] the parent(s)/client(s) and their attorney(s) to consider the recommendation and to notify the [family relations officer] within two (2) weeks as to whether or not the custody or visitation issues remain in dispute. . . . If the final joint conference does not result in a confirmed settlement by counsel and/or the parties of the disputed issues, the evaluator will submit a comprehensive written evaluation to the Clerk of the Court including recommendations. . . . Completed written reports on non-agreements will be submitted to the Court within five (5) months

from the time of the referral notification date." Judicial Branch Court Support Services Division Policy and Procedures, Family Services Comprehensive Evaluation, pp. 6–9.

[5] The record reflects that, although the plaintiff's counsel indicated the need for an emergency hearing, no written motion requesting such a hearing had been filed. "The purpose of requiring written motions is not only the orderly administration of justice; see *Malone* v. *Steinberg*, 138 Conn. 718, 721, 89 A.2d 213 (1952); but the fundamental requirement of due process of law. *Winick* v. *Winick*, [153 Conn. 294, 299, 216 A.2d 185 (1965)]." *Connolly* v. *Connolly*, 191 Conn. 468, 475, 464 A.2d 837 (1983).

[6] The family relations officer did not testify and her recommendations were not provided directly to the court. The plaintiff's counsel submitted proposed orders and established, through direct examination of the guardian ad litem, that two of her six proposed orders mirrored, "in essence," the recommendations of the family relations officer.

[7] The guardian ad litem, on cross-examination, admitted that she had not visited the defendant's home. There is no indication in the record that the defendant had been evaluated or treated by a mental health professional. The guardian ad litem testified that the defendant had indicated, at a deposition, that she was taking an unspecified medication.

[8] The plaintiff's counsel had advised the court at the beginning of the hearing that she was not pursuing any economic issues and issues of child support could be dealt with "after today." Although the defendant has not raised a claim in this regard, the order modifying child support was entered without either party having submitted a sworn financial affidavit or a child support guidelines worksheet. In entering its order, the court made no reference to the child support guidelines. See Practice Book § 25-30 (a) and (e); *Tuckman* v. *Tuckman*, 308 Conn. 194, 208, 61 A.3d 449 (2013) (trial court abused discretion by establishing child support without requiring child support worksheet, without determining net income of parties and without applying child support guidelines).

[9] Practice Book § 11-11 provides in relevant part: "Any motions which would, pursuant to Section 63-1, delay the commencement of the appeal period, and any motions which . . . would toll the appeal period and cause it to begin again, shall be filed simultaneously insofar as such filing is possible, and shall be considered by the judge who rendered the underlying judgment or decision. The party filing any such motion shall set forth the judgment or decision which is the subject of the motion, the name of the judge who rendered it, the specific grounds upon which the party relies, and shall indicate on the bottom of the first page of the motion that such motion is a Section 11-11 motion. . . ."

Practice Book § 11-12 (c) provides: "The motion to reargue shall be considered by the judge who rendered the decision or order. Such judge shall decide, without a hearing, whether the motion to reargue should be granted. If the judge grants the motion, the judge shall schedule the matter for hearing on the relief requested."

[10] General Statutes § 46b-7 provides: "Whenever, in any family relations matter, including appeals from the Superior Court, an investigation has been ordered, the case shall not be disposed of until the report has been filed as hereinafter provided, and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard. Any report of an investigation shall be made in quadruplicate and shall be filed with the clerk and mailed to counsel of record."

[11] This appeal was filed on September 21, 2012. At that time, the trial court had not created a signed memorandum of its decision. After the defendant filed notice pursuant to Practice Book § 64-1 (b), the trial court signed a transcript of its decision. Later, we granted relief in accordance with a motion for review filed by the defendant in that we ordered the trial court to articulate the factual and legal basis for its August 13, 2012 decision awarding the parties joint legal custody, its order that their child's primary residence would be with the plaintiff, and its August 31, 2012 denial of the defendant's motion to reargue. The trial court issued its articulation on May 9, 2013, almost seven months after the trial court clerk placed a notice in the court file indicating that the evaluation report at issue had been filed on September 27, 2012.

[12] Although the plaintiff was permitted to present his evidence first at the subject hearing, the clerk's coded entry in the court file indicates that the court's decision was a ruling on the *defendant's* motion for modification, which did not appear on the docket on August 13, 2012. In light of the facts apparent in the record, we consider this coding in error, as the request for

the modification of the plaintiff's child support obligation, which the court also granted, was contained only within the *plaintiff's* motion for modification.

[13] General Statutes § 46b-6 provides in relevant part: "In a pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. . . ."

[14] See footnote 10 of this opinion.

[15] "Although the Superior Court is granted broad authority to promulgate rules, such rules shall not abridge, enlarge or modify any substantive right. Conn. Const., art. V, § 1; General Statutes § 51-14 (a) . . . ." *Duve* v. *Duve*, supra, 25 Conn. App. 267.

[16] The family relations officer in *Duve* met with the parties to relate the findings of her study and provided both parties with a two page written statement disclosing the names of people she had interviewed in compiling her report. *Duve* v. *Duve*, supra, 25 Conn. App. 265. This meeting took place in late January, but the hearing did not proceed until March 19. Id. The court in *Duve* also noted that during the initial hearing on the self-represented father's motion to modify, the family relations officer gave extensive testimony on direct examination and was then extensively cross-examined by the father. The father again called the family relations officer as a witness in the presentation of his case. After the report was filed, the father was given an opportunity, pursuant to his motion for a mistrial, to argue that because he did not have the report prior to the hearing, he was entitled to a modification of the court's orders. The court denied the motion for mistrial after the defendant failed to offer the trial court any evidence or testimony showing a disparity between the information contained in the report and the information contained in the family relations officer's worksheet or her extensive testimony at trial. Id., 268.

[17] Courts often are called upon to make ex parte or exigent rulings, such as those related to temporary custody, that may later be subject to reconsideration upon a full and fair hearing on the merits of the pending matter. If the "emergency" issue in this case, where the parties' child would attend school in the fall, had to be decided on August 13, 2012, a more limited, temporary order might have resolved that question without prejudice to either party, and the court could have more fully disposed of the custody issue at a later date. See *Strobel* v. *Strobel*, supra, 73 Conn. App. 430–37 (when parties given family relations report just prior to commencement of emergency hearing, court issued temporary orders but continued matter one month for full hearing on custody and visitation orders to give parties time to review report).

[18] Notably, the defendant in *Payton* did not claim, on appeal, that the report would have yielded additional or new information concerning each party's ability to retain physical custody of the child. *Payton* v. *Payton*, supra, 103 Conn. App. 832 n.6. In the present case, the defendant pleaded with the court to permit her time to rebut the hearsay and double hearsay assertions of the guardian ad litem as to the result of the family relations officer's investigation. As of the dates the defendant sought reargument, August 30, 2012, and filed her appeal, September 21, 2012, the report still had not been filed.

[19] Even in its articulation on May 9, 2013, the court found that, as of the time of the hearing, the defendant "had received the results of the family relations study the prior week . . . ."

[20] The plaintiff suggests in his appellate brief that the defendant had an available remedy for the court's error that she did not pursue in that she could have filed a subsequent motion for modification of the court's custody and child support orders. This, however, would not have been a sufficient remedy because it would not have entitled her to a reconsideration of the basis for the August 13, 2012 custody modification, but would have required her to demonstrate that circumstances had changed since that time, thereby warranting a modification. "To obtain a modification, the moving party must demonstrate that the circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 55–56, 732 A.2d 808 (1999).